*1088 OPINION.
Steknhagen :
1. The single error assigned in the petition is respondent’s failure to compute petitioner’s taxable gain from contracts for the sale of lots in accordance with Solicitor’s Law Opinion 988, C. B. II, page 84, which is as follows:
No realization of gain or loss arises from a mere contract to sell real estate in the future. The sale is held to occur at the time a deed passes or at the time possession and the burdens and benefits of ownership are from a practical standpoint transferred to the buyer whichever occurs first. Payments made prior to the sale are to be applied in reduction of cost so far as they do not exceed cost; being treated as income to the extent, if any, to which cost is exceeded.
Petitioner contends that its contract for deed did not constitute a sale, but an executory agreement for sale, and denies the realization of any taxable gain from transactions based on its contracts signed during the taxable period. It relies primarily on Feuchtenberger v. Williams, 137 Va. 578; 120 S. E. 257, as establishing that the contracts passed no property right in the lots under Virginia law.'
*1089 Even if the petitioner’s taxable income depended upon the passing of title (but see Charles J. Derbes, 24 B. T. A. 276, 283), the cited case is inapplicable. The contract in that case provided that default in payment of any installment would render it void; default had occurred, not even the full initial payment having been made, and the court held that the prospective purchaser was without property rights in the premises to support a mechanic’s lien. But here petitioner’s contracts are not voided or voidable by the vendee upon default. Clearly, a definition of a contractee’s right under a voided contract is not determinative of the petitioner’s rights under the present instruments.
But we are of opinion that the question whether the transactions were sales is not determinative of income under these contracts. During the taxable period petitioner received under its contracts cash sums over which it acquired absolute ownership and control. While its obligation to transfer title in the lot was dependent upon payment of all installments of the purchase price, its right to the cash installments as paid was absolute and unconditional. They were not held in trust nor subject to any obligation to return in case the contractual obligations were not fulfilled. Under the statutory definition of gross income in section 213(a), they clearly constituted income derived from dealings in property. Cf. Charles J. Derbes, 24 B. T. A. 276; Lucas v. North Texas Lumber Co., 281 U. S. 11.
This proceeding is readily distinguishable from Biscayne Bay Islands Co., 23 B. T. A. 731, wherein petitioner contended that the obligations received by it were of little or no value. After so finding as a fact, the Board noted that in any event the transactions there considered were not present sales and that no part of the future payments could be said to have accrued in the first year. Petitioner insists that the same reasoning is applicable here. The agreements construed in the cited case .provided that any default in subsequent installments rendered the contract void; after such event, which rested in the prospective purchaser’s control, no liability for the unpaid portion of the purchase price remained. In this proceeding, however, a default gave petitioner the option to declare the unpaid remainder due and payable. The liability for the full price, therefore, became absolute at the signing of the instrument.
The view that petitioner’s cash received constitutes income is strengthened by an examination of the consequences of the contrary view. In respect of the installment sales as defined in the statute (section 212(d)), petitioner is taxed only on that proportion of the installment payment which the total anticipated profit bears *1090 to the purchase price. Since practically the entire payment would constitute gain if the contract were not carried out, it is taxed, therefore, only on the minimum possible profit realized.
But in respect of those transactions not taxable on the installment basis, it may happen that the total anticipated profit, on which petitioner is here taxed, exceeds the amount of the cash payment received. In such a situation it can not be said, as above, that petitioner is taxed only on cash paid, which upon receipt became its absolute property. But together with the cash, petitioner likewise received the unconditional obligation of the vendee to pay the remaining amount of the purchase price. In absence of evidence to the contrary, the respondent’s determination that such obligations were worth no less than par at the time of receipt is sustained.
2. At the hearing petitioner amended its petition to allege that respondent should add to the cost of the subdivided tract from which its lots were sold $96,000, expended in addition to a $75,000 reserve therefor. This addition results in a total cost of $171,000 for development and improvement of the tract. Respondent contests the propriety of allowing this addition in cost, and further pleads affirmatively that the $75,000 cost, already allowed, should be reduced by $57,179.17, representing that part of the original reserve unexpended during the taxable period.
Petitioner’s witnesses testified that the expenditures made were for roads, water mains and other improvements of a capital nature, and its contract with the Atlantic Coast Realty Corporation indicates that the cost of its surveys, accounting, taxes and other non-capital items were likewise to be drawn from this reserve. Respondent bases his plea for reduction of the cost determination on the ground that $57,179.17 was not actually spent until after the taxable period.
The inclusion in cost of an estimated future expenditure on the development of tracts of land from which lots are sold has been recognized by the Board as proper. Kentucky Land, Gas & Oil Co., 2 B. T. A. 838; Osgood Land & Livestock Co., 22 B. T. A. 387; cf. O. D. 226 (1919), C. B. I, page 26; O. D. 567 (1920), C. B. II-2, page 108. The amount of $171,000 should be treated as cost of the land and development.
3. In his amended answer respondent pleads that he erroneously allowed the deduction in 1926 of the amount of $2,992.57 claimed as a net loss sustained in 1925. During 1925 petitioner expended this amount for stationary, taxes, legal services, etc., in perfecting its organization and securing title to its land. No lots were sold and no .normal business was conducted in 1925. The alleged loss, *1091 therefore, did not result from the operation of a trade or business and is not a net loss within section 206 (a) (b) of the 1926 Act. Harrisburg Hospital, Inc., 15 B. T. A. 1014; 379 Madison Avenue, Inc., 23 B. T. A. 29, 44.
4. The respondent also pleads affirmatively that in the event it be held, as petitioner contends, that the transactions were not present sales, and, therefore, involved no gain, there can be no room for the allowance of any commissions whatever in respect of such transactions, Since, however, it has been held above that income was realized upon the transactions of the taxable period, the commissions of $30,971.67 paid in respect of such income transactions were properly determined by respondent to be deductible. The petitioner is entitled to the deduction of no more.

Judgment will be entered under Rule 50.