## WICHITA STATE BANK & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7052.

Circuit Court of Appeals, Fifth Circuit.

March 16, 1934.

Rehearing Denied April 18, 1934.

Harry C. Weeks, of Wichita Falls, Tex., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Walter L. Barlow and Sewall Key, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, and Jacob M. Leinenkugel, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

In redetermining the income taxes for 1926 and 1929 of the Wichita State Bank & Trust Company, the Board of Tax Appeals charged to it as income moneys returned to it from the State Depositors' Guaranty Fund and from the liquidation of failed member banks. The bank complains of that action. A Texas statute, Rev. St. 1925, art. 437 et seq., required each state bank to protect its depositors either by a bond or policy of insurance, or by becoming a contributor to the Depositors' Guaranty Fund. This taxpayer elected the latter. The fund was to be raised by an annual contribution or assessment based on average deposits until its amount reached $5,000,000. A fourth of each bank's contribution was paid in cash into the state treasury, and held there as a bailment. Three-fourths was entered on the books of the bank as a deposit to the credit of the State Banking

Board, which consisted of the Attorney General, the Bank Commissioner, and the State Treasurer, and which administered the business of the Guaranty Fund. If a contributing bank failed, its ready money was ascertained by the Board, and what further money was needed to pay its depositors was taken from the Guaranty Fund, which in turn was reimbursed by a special cash assessment levied on the contributing banks. They afterwards received the dividends from the assets of the failed bank which would have gone to its depositors. It usually took about three years to complete a liquidation. The dividends ranged from nothing up to 75 per cent., the amount being wholly uncertain at the time of failure. The statute provided, article 445, that any bank might withdraw its pro rata part of the Guaranty Fund in case of its voluntary liquidation with full payment of its depositors, or in case of its changing over to the bond system of protecting its depositors. This taxpayer changed over to the bond system and eventually received back its part of the Guaranty Fund. It also received dividends from the liquidation of banks which had failed while it was a contributor. The Board of Tax Appeals held that both the annual assessments to create the $5,000,000 Guaranty Fund and the special assessments to restore it when bank failures occurred, since they were required by law as a condition of doing business, were ordinary expenses of business in the year when paid, and that all subsequent receipts as a result of either were taxable income. The taxpayer asserts that all the assessments were investments, the original annual assessments producing a valuable interest in the Guaranty Fund and the special assessments being the purchase of an interest in the assets of the failed banks by subrogation to their depositors; so that returns therefrom were not income until they exceeded the amount of the investment. Texas banks in their bookkeeping carried these assessments as assets, charging off losses as they were ascertained by liquidation of the failed banks.

We are of opinion that the scheme of the statute is in substance to require the banks to insure their depositors. When this is done by a surety bond or policy, the premium paid is an expense of business. When it is done through the Guaranty Fund, there is a sort of mutual insurance on the assessment plan. When a bank fails the cash assessment made because of the failure is the premium paid for the insurance. Prima facie it is an expense like the bond premium is when that form of insurance is carried. There may be a return, but it will be deferred long beyond the tax year and is wholly uncertain. Taxation being a practical matter, payment of such an assessment may well be treated as a present expense, and any return that may come from it in future years as a windfall or a profit, like a collection on a debt charged off as worthless. As to these special assessments resulting from failures, we affirm the action of the Board.

The contributions to the permanent Guaranty Fund stand otherwise. That fund is not intended to be lost or consumed, but is to stand as a reservoir drawn on to provide prompt payment to depositors, but to be at once replenished by the special assessments. It is analogous to the capital of an insurance company. Each bank owns its pro rata part in it, which it ought ultimately to get back. This bank got back its share by withdrawal from the plan, and it appears that on repeal of the law other banks got back their share. We think the contributions to the $5,000,000 Guaranty Fund, while made annually instead of in a lump sum, were essentially capital investments and ought to be dealt with as such. This conforms with the regulation made on the subject under the Revenue Act of 1918 and now carried as article 132 of Regulations 74 and 77 under the Revenue Acts of 1928 and 1932. In holding otherwise the Board erred.

For this error the petition for review is granted, and the judgment of the Board is set aside for further proceedings not inconsistent with this opinion.