## DELONE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6606.

Circuit Court of Appeals, Third Circuit.

Dec. 1, 1938.

Jacob S. Seidman, of New York City, for petitioner.

James W. Morris, Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Alexander Tucker, Sp. Assts. to the Atty. Gen., and Arthur A. Armstrong, of Washington, D. C., for respondent.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DICKINSON, District Judge.

This is a deficiency tax assessment case with penalties. The taxes in question are based upon income tax returns for the years 1925, 1927, 1928 and 1929. We must distinguish between the year 1929 and those which preceded. This is because a deficiency tax assessment for the year 1929 was within the authority of the Commissioner to levy. The Commissioner had no authority to levy a tax for any of the preceding years unless the returns for those years were fraudulent. This divides the case presented into two questions, the correctness of the returns for the several years, and, if incorrect, their fraudulent falsity. The finding of fraud in the return for 1929 goes only to the imposition of the penalty. The like finding in the previous years goes both to the imposition of the tax and the penalty. The returns were

508

joint income tax returns for the petitioner and his wife.

 The findings made are findings of fact. The well known classification of facts into evidentiary facts and ultimate fact inferences is to be recognized. The evidentiary facts are acts of omission and commission of the taxpayer. The ultimate fact inference is the motive of the taxpayer. Did the taxpayer have a fraudulent purpose of tax evasion in what he did or omitted doing? In other words, the ultimate fact finding is one of fraud. This is a fact inference from the evidentiary facts. The Board of Tax Appeals is the fact finding tribunal. Its findings of evidentiary facts are accepted. Indeed there is here no controversy over them. The real question is the proper inference to be drawn. These evidentiary facts are many and must be set forth.

We take up the taxes in the chronological order of their discussion by the Board of Tax Appeals. There are however some general facts, not the subject of controversy, which affect the whole fact situation. These we first state.

The petitioner read law and was admitted to the Bar. He is one of that class of lawyers however who are lured away from purely professional activities by the enticement of better financial returns from other employments. These other activities were many. In the course of them he became a stockholder in a number of corporations. Doubtless due in part to this, he became their counsel. The result was he became a well advised and experienced business man as well as a lawyer. In his later years he did not practice law. At the time of the occurrences in question he was over 70 years of age. These general facts have a bearing on the finding of fraud which the Board has made against him. The petitioner may plead inadvertence but he cannot and does not plead ignorance. It by no means follows, however, that because he was an experienced business man, as well as a lawyer, that he would be able to divine what a Commissioner would rule in a tax case. His returns were made on the cash basis. He employed a bookkeeper who had served him in that capacity for twenty years. A part of his bookkeeping system was what in the old days was called a Day Book. This was really a contemporaneous history of daily financial transactions. His returns were compiled from this Day Book.

We need not discuss in the earlier year cases the question of tax liability because no tax should be levied for the years before 1929 unless the returns for those years were not only incorrect but likewise fraudulent. They could not be fraudulent unless incorrect. We accordingly limit ourselves to the question of fraud. Upon this question the burden is assumed by the Board to be upon the Commissioner. As bearing upon it their ruling was handed down December 12th, 1936. The oldest return now to be found fraudulent was made in 1925. The inquiry was being made eleven years after the transaction, the good faith of which was the subject of inquiry. The inquiry into the latest return (excluding 1929) was over eight years after it had been made. Much would be excused to one called upon to answer an eleven year old charge of fraud, which would not be allowed to one called upon to explain a recent transaction.

### The 1925 Tax.

 This is directed to three items. Interest on bonds of a Water Company; profit on sale of stock of Hanover Cordage Company, and profit on sale of Harman property. The aggregate is substantial, being nearly $100,000. In each of these tax years there were other items but as these have for one reason or another been dropped, we shorten the discussion by not referring to them. The interest item referred to was $600 received as interest on $10,000 of a bond issue of the Hanover & McSherrystown Water Company. The Board found this interest had been received. The answer of the petitioner is that these bonds were pledged as collateral for an aggregate of $11,000 of Bank loans; that the bonds were in the actual custody of the Bank which collected the interest coupons and applied the collections to the interest due it, so that the petitioner never in fact received the interest payments and in consequence had no record of its payment in his books from which his returns were made up. It will be noted that although all reference to the interest received was omitted from the return, so likewise was the interest paid on the loan. The Board restricted itself to a mere statement of the fact of the receipt of the interest and its omission from the return, coupled with like transactions in subsequent years.

Counsel for respondent content themselves with a repetition of the comments of the Board almost with verbal fidelity. Cer-

tainly if this item stood by itself no one would attach to it a finding of fraud, so we pass it without further comment.

The history of the next item of Hanover Cordage Company is too complex for statement within the limits of an opinion. The question of whether there was a loss as petitioner claims or a gain as the Commissioner insists turns upon the March 1913 value of the stock. It had no market value in the sense of quotations. It was closely held. There had been differences among those identified with the Company so that sales of stock were not determined in price by considerations of the value of the stock in itself. It had a value far above any book value disclosed. Opinions of its value widely differ.

■ The finding of the Board supports the appraisal opinion of the Commissioner. The finding however is based upon the estimate of value given by a single witness plus what may be found to be book values. The testimony of the single witness is far from convincing. Books may be made to show, intentionally or otherwise, any kind of a value. The truth to be kept in mind is that we are in quest of fraud. The Board has overlooked and of course has not mentioned a fact which it seems to us has deep significance because of its direct bearing upon the question of fraud. That fact is that what we have called the Day Book contains a full history of transactions in this Hanover stock. It is difficult to believe that one contemplating a fraud to be made effective by concealment, would set forth the transaction in a book which he knew would be open to examination. No one can be found guilty of a fraudulent untruth by the mere expression of a wrong opinion. This is so notwithstanding the disposition of all of us to think and to say that whoever differs with us in opinion is a fraud and a liar.

The next item is that known to this record as "Profit on Harman property". The property when acquired was an old residence property. The petitioner converted it into a business property. The cost of the change must have been substantial. It was sold at the nominal price of $25,000 but in a real sense $5,000 of this was in stock of the purchaser, which it can well be believed was valueless. For some reason the Board omits all reference to it. Without thought of being disrespectful to the Board to charge a taxpayer with fraud because he returned no profit on such a trans-

action is comparable to charging the Board with wilful misrepresentation because it omitted reference to this $5,000 stock item.

## The 1927 Tax.

The deficiency here is made up of five items. One is interest on the Water Company bonds which we have already discussed and need not repeat the discussion. Another is a like item for interest on bonds of the Republic of Finland to which the like comments apply. Further than this we assume these items were inserted merely for the sake of completeness of statement for no one would think an omission of these items would betoken fraud. The sums are relatively insignificant. A third item is what is called additional salary. The petitioner was an executive of the Renovah Spinning Mills Company and as such received a salary of $20,000 which he returned. Hart was Secretary of the Company and in receipt of a salary of $5,000, of which he made return. The Government received its tax on both. The charge is that the salary to Hart was a blind and between them was received by the petitioner. This is based on some purchases of stock which were made by Hart and assigned to the petitioner. Just why does not clearly appear. The relations between the petitioner and Hart were far from being arm's length relations. Hart was bookkeeper for the petitioner and trusted without limit. He was not an infrequent borrower from the petitioner. We will have something to say about this later, but for the present the comment is called for that what Hart did with the moneys he received is far from justifying the double inference that the petitioner first fraudulently had Hart draw a salary for him and had again fraudulently suppressed his receipt of the money for the purposes of tax evasion. A fourth item is "Profit on Sale of Krug Property". Just what the facts of this transaction were, do not appear beyond the fact statement made by the Board that a half interest in the property was purchased before March 1913 for $2,500, and the other half interest later for $4,250, and that $12,000 was received under an agreement of sale in 1926 and a conveyance in 1927, from which the Commissioner finds that a profit of $6,905.27 was realized in 1927. Counsel for the respondent state that the Board disregarded this item as no evidence of fraud. Counsel for the petitioner doubtless, for this reason, do not discuss it. We in consequence pass it without

comment. The final item is "Profit on Sale of Stock of First National Bank of Hanover". The record leaves this item in a very unsatisfactory state. We are uninformed as to the cost or 1913 value of the property and hence cannot find a gain or loss. The taxpayer had no record of the cost and no recollection of its purchase. He gave no explanation of the omission of this item beyond the more or less vague statement that he had sustained losses which more than offset any gain on this stock. Counsel for petitioner have been of no help to us. Neither the Commissioner nor the Board would be expected to accept this excuse for not making a return of the gain, if there was one, nor can we. It is to be remembered however that the inquiry, so far as it affected the cost of the stock or its 1913 value was being made more than twenty-three years after the transaction which was the subject of the inquiry and as to the return was nine years after the return had been made. Explanations which would have been expected and might have been called for of a recent transaction, may well be excused after such a lapse of time as existed here. This has a bearing upon the question of actual fraud.

### The 1928 Tax.

There are three items for this year. One is the profit realized on the redemption of the Water bonds; another the salary received from the Renovah Mill, which we have already discussed, and the other fees for legal services rendered to the Hanover Engineering Company. The Board has made the finding that there was no evidence of what the profit on the redemption of the Water bonds was but there was evidence that a profit had been received. The taxpayer offered no explanation of the omission from his return beyond the circumstance that he could resurrect no evidence of the·cost of the bonds and the again vague statement that the profit, if any, was more than offset by unreturned losses and interest payments. There were likewise vague statements implying that he may have held some of these bonds for others who were the real owners. Counsel for petitioner have thrown little light on this transaction. The bonds purported to be tax free bonds, and there was evidence of some payments at the source. The evidence would well warrant a finding of liability to a tax but we, as before several times said, are concerned with a finding of fraud. There is little difficulty about the Hanover Company fees of $1,650. This sum was not paid to the taxpayer. The Company owed him moneys in a real estate sale. In the settlement statement the Company gave him credit for $1,650 for legal services. That moneys thus received might have been omitted from a tax return through an oversight is easily understood.

### The 1929 Tax.

This includes two items. One is a repetition of the Renovah salary item which we have sufficiently discussed and the other profit on the sale of factory sites to the Renovah Company. This latter was a transaction of some complexity but in its final stage relatively simple. The taxpayer was practically the sole stockholder and creditor of a former owner of the property. He wished to wind up its affairs. He required the Company to sell the real estate in question at a price, all of which went back to him as its creditor. The next step was to find a purchaser. This the Hanover Company became. He was practically the sole stockholder in that Company. It was indebted to him for legal services which it paid by including the charge in their payment for the real estate. It was a seven year old transaction. The Commissioner and Board drew the inference of fraud from the mere omission in the return. The item should have been included but its omission does not argue a fraudulent intent. It must be remembered that this taxpayer's returns were made up from his cash returns and disbursements. This sale transaction was nothing more than a change of one corporation for another. There was no real gain in it.

The conclusion we have reached is that there is no basis for the finding of fraud.

The order of the Board of Tax Appeals is accordingly reversed.