ROBERT F. AND HAZEL HAYNSWORTH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5501–75.   Filed August 22, 1977.

*Towner Leeper,* for the petitioners.
*Bernard B. Nelson,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency of $7,993.52 in petitioners' Federal income tax for 1972. The issue for decision is whether petitioners realized ordinary income in 1972 in the amount of the distributive share of the unused portion of a reserve for estimated subdivision development expenses which had been deducted by a partnership, of which petitioner Robert F. Haynsworth was a member, in computing its gain in prior years on the sale of lots from the subdivision.

FINDINGS OF FACT

Petitioners Robert F. Haynsworth (hereinafter Haynsworth) and Hazel Haynsworth, husband and wife, were legal residents of El Paso, Tex., when they filed their petition. They filed a joint Federal income tax return for 1972 with the Internal Revenue Service, Austin, Tex.

In 1959, Haynsworth & Guaranty Title Co. (hereinafter GTC) formed a partnership known as Magnetic Hills Joint Venture (hereinafter the partnership). In that year, the partnership bought lots in an area of El Paso, Tex., known as Canyon Hills. Under the terms of the partnership agreement, Haynsworth was to receive 90 percent of the profits and bear the same percentage of the partnership losses. This percentage of the profits and losses did not change from 1959 through 1972.

In 1961, Lance Engineering, Inc., submitted to the partnership an estimate of the cost of developing the partnership's lots in Canyon Hills. This cost estimate included expenses for paving, curbs and gutters, street grading, lot grading, utilities, engineering expenses, interest, taxes, supervision, and miscellaneous overhead expenses. The total estimate was $404,406.

This estimate of development costs was sent to the partnership's accountant, and he made entries on the books to

reflect an increase in the development cost of the Canyon Hills property. He did this by debiting an account entitled "Canyon Hills Development Cost" with the $404,406 and crediting an offsetting reserve entitled "Provision to develop Canyon Hills" with the same amount.

In 1962, 1963, and 1964, the partnership's accountants made adjustments to the original Lance Engineering, Inc., estimate. These adjustments included a decrease of anticipated development costs by $62,023.30 in 1962 to eliminate the estimated interest expense as a result of the payment of a mortgage on the property. The estimated costs were also decreased by $32,400 in 1963 but were increased by $35,000 in 1964.

The partnership developed the Canyon Hills lots and incurred and paid expenses for this purpose. It also sold some of the lots each year, either outright or on an installment basis. As the partnership sold individual lots during those years, it reported the sales in its partnership returns. In computing its cost of goods sold, the partnership included in such cost the actual cost of the lots which were sold plus the estimated development cost per lot.

The partnership credited the account entitled "Canyon Hills Development Cost," originally debited for the total estimated cost of development ($404,406), each year with a proportionate share of the estimated cost of the lots which were sold during that year as well as with the adjustments referred to above. As of November 1, 1972, the account showed a debit balance of $74,656.73.

The account entitled "Provision to develop Canyon Hills," which began with a credit in the amount of the estimated development cost ($404,406), was debited for the expenses which were actually incurred and paid as development costs as well as for the adjustments referred to above. As of November 1, 1972, this account showed a credit balance of $119,876.50, a sum of $45,219.77 greater than the corresponding account entitled "Canyon Hills Development Cost."

The reason for the difference of $45,219.77 in the balances in the "Canyon Hills Development Cost" and "Provision to develop Canyon Hills" accounts is that, during 1959 through 1972, the first of these accounts was credited with, and

deductions were taken on, the partnership returns for more expenditures than were actually paid by the partnership.

On November 1, 1972, Roman & Russell Builders, Inc. (Roman & Russell), purchased the remaining 38 residential lots in the Canyon Hills subdivision not previously sold. The contract of sale recited that "R. F. Haynsworth, doing business as Canyon Hills" was the seller. The consideration for the sale was a vendor's lien promissory note in the original principal sum of $125,000. The purchaser made no payment to the partnership in 1972. After this sale, neither petitioner nor the partnership owned any residential lots in Canyon Hills.

As of November 1, 1972, the records of the partnership reflected a distribution of all assets and liabilities to the partners as follows:

| | | Distribution | |
|---|---|---|---|
| | Total | Haynsworth | GTC |
| Bank of El Paso—checking account...... | $10,769.38 | $10,769.38 | 0 |
| Surety Savings & Loan—savings account.................................................... | 83,930.96 | 68,735.14 | $15,195.82 |
| Account receivable—Guaranty Title Co. ............................................................ | 325.05 | 0 | 325.05 |
| Interest receivable.................................... | 4,879.58 | 4,879.58 | 0 |
| Notes receivable........................................ | 20,750.00 | 20,750.00 | 0 |
| Canyon Hills land—commercial lot...... | 3,968.02 | 3,571.22 | 396.80 |
| Canyon Hills land—other ....................... | 26,642.57 | 23,978.31 | 2,664.26 |
| | 151,265.56 | 132,683.63 | 18,581.93 |
| Less amount due on development costs...................................................... | 45,219.77 | 40,697.79 | 4,521.98 |
| | 106,045.79 | 91,985.84 | 14,059.95 |
| Sale of Canyon Hills land: | | | |
| Contract price........................................ | 125,000.00 | 112,500.00 | 12,500.00 |
| Amount due on development costs.... | 45,219.77 | 40,697.79 | 4,521.98 |
| | 170,219.77 | 153,197.79 | 17,021.98 |
| Cost........................................................ | 26,642.57 | 23,978.31 | 2,664.26 |
| Gross profit ........................................... | 143,577.20 | 129,219.48 | 14,357.72 |
| Gross profit percent ............................ | 84.35 | 84.35 | 84.35 |
| 1972 collections ..................................... | 45,219.77 | 40,697.79 | 4,521.98 |
| Income realized in 1972...................... | 38,143.05 | 34,328.76 | 3,814.29 |

As noted, the unabsorbed development costs of $45,219.77 were treated by the partnership as part of the sales price. The partnership attached this schedule to its 1972 tax return to

show the gain, reported as long-term capital gain, on the sale of the remaining 38 Canyon Hills lots to Roman & Russell.

Petitioners reflected on their books and records the following for the taxable year ended December 31, 1972:

*Journal entry (21)*

|  | Debit | Credit |
|---|---|---|
| Cash in bank | $10,769.38 | |
| Cash in bank savings | 68,735.14 | |
| Interest receivable | 4,879.58 | |
| Notes receivable | 20,750.00 | |
| Canyon Hills land—commercial | 3,571.22 | |
| Canyon Hills land—other | 23,978.31 | |
| Amount due on development | | $40,697.79 |
| Magnetic Hills joint venture | | 91,985.84 |

To record assets received in partnership dissolution.

*Journal entry (22)*

|  | Debit | Credit |
|---|---|---|
| Notes receivable | $112,500.00 | |
| Amount due on development | 40,697.79 | |
| Canyon Hills land—other | | $23,978.31 |
| Gain on sale of assets | | 129,219.48 |

To record sale of land.

In a supporting schedule to part II, Schedule D, of their individual income tax return for 1972, petitioners reported long-term capital gain of $34,328.76 from the sale of the Canyon Hills land as follows:

| *Schedule D, part II* | *Canyon Hills land* |
|---|---|
| Selling price | $153,197.79 |
| Cost or basis | 23,978.31 |
| Gross profit | 129,219.48 |
| Gross profit percent | 84.35 |
| Collections during 1972 | 40,697.79 |
| Gain realized in 1972 | 34,328.76 |
| Gain realized in prior years | 0 |
| Total realized | 34,328.76 |
| Deferred income | 94,890.72 |

Fifty percent (i.e., $17,164.38) of petitioners' long-term capital gain, as reported from the sale of the Canyon Hills land, was included in income.

In the notice of deficiency, respondent reduced petitioners' reported capital gains by $17,164.38 (i.e., 50 percent of the gain of $34,328.76 reported from the sale of the Canyon Hills

land) and increased ordinary income by $40,697.79 (the amount shown in the 1972 partnership return as Haynsworth's share of "Amount due on development costs"), explaining:

In relation to property known as Canyon Hills, * * * [the partnership] estimated development costs of this property. Under * * * [the partnership's] method of accounting when * * * [the partnership] began development of Canyon Hills, * * * [it] debited an account called "Canyon Hills Development Costs" and credited an account called "Provision to Develop Canyon Hills" for the total of the estimated development costs. The Canyon Hills Property was developed and sold over a number of years. On November 1, 1972, the debit balance in the "Canyon Hills Development Costs" account was $74,656.73 and the credit balance in "Provision to Develop Canyon Hills" account was $119,876.50. The difference in the accounts on November 1, 1972, in the amount of $45,219.77, represents deductions of estimated development costs over the years of selling parcels of Canyon Hills which were not expended for development costs. On or about November 1, 1972, the joint venture was liquidated and the remaining property known as Canyon Hills was sold.

It has been determined that under * * * [the partnership's] method of accounting * * * [the partnership] realized taxable income of $45,219.77 when there was no further obligation to expend monies for development of Canyon Hills.

It is further determined that, in any event, * * * [the partners] are estopped from claiming that taxable income did not result from the elimination of * * * [the partnership's] obligation to expend $45,219.77 in development costs.

### OPINION

Under the method of accounting employed by the partnership, the $404,406 estimate of the cost of developing the Canyon Hills subdivision was reflected in the partnership's accounts by debiting the "Canyon Hills Development Cost" account and crediting the "Provision to develop Canyon Hills" reserve account. In computing the cost of each lot which was sold from the subdivision, the "Canyon Hills Development Cost" account was credited with a proportionate part of the total estimated cost of developing the subdivision. As actual development expenses were incurred and paid, the "Provision to develop Canyon Hills" reserve account was debited with the amounts of such payments.

There was a difference of $45,219.77 between the larger credit balance in the "Provision to develop Canyon Hills"

when development work was completed and the smaller debit balance of the "Canyon Hills Development Cost" account when the sale of the remaining 38 lots to Roman & Russell was negotiated. When that sale was consummated, it was clear that this $45,219.77, already deducted as part of the cost of lots which were sold, would not be expended, and the reserve was ready to be closed. The records of the partnership show a distribution to the partners of this $45,219.77 together with all partnership assets. In computing the installment gain from the sale of the 38 lots, the $45,219.77 was treated as cash received in the year of sale. Haynsworth reported his share of that amount as capital gain.[1]

Consistent application of the method of accounting employed by the partnership would cause the partnership to realize income in the amount of the $45,219.77 difference between the amount deducted in computing gain on the lots which were sold and the development costs actually expended. It is true that the annual tax accounting system ordinarily does not permit an increase in taxable income to offset a failure to report income in a prior year. However, where a reserve, such as the one here used by the partnership, is maintained to cover anticipated subdivision development costs, it should reflect the taxpayer's judgment each year as to the amount of the expected costs. When an error in the computation of projected costs is discovered, a correction should be made at that time so that the cost of lots sold thereafter could be correctly computed. And when the reserve account is closed, or otherwise so adjusted as to reflect the release of the previously deducted reserved amounts, the amount released must be reported as income.[2]

---

[1] Nothing in this opinion is intended to indicate any views on whether any gain petitioners realized on this sale was ordinary income or capital gain. However, the contract of sale of the Canyon Hills land to Roman & Russell does not refer to this $45,219.77 or any obligation to pay development costs. We can see no ground on which the net balance in these reserve accounts can be considered as capital gain as reported by petitioners in their 1972 income tax return, and petitioners do not seek to support such treatment.

[2] The parties agree that sec. 1311 and related sections of the Internal Revenue Code of 1954 do not apply in this case. Those provisions, insofar as they deal with basis adjustments, are limited to the same "item," and the amounts here in controversy are not the same items as the previously deducted costs.

This principle has been applied in a variety of factual settings. In *Bear Manufacturing Co. v. United States*, 430 F.2d 152 (7th Cir. 1970), cert. denied 400 U.S. 1021 (1971), an accrual-basis taxpayer, in 1937, agreed to pay royalties to General Motors for the use of certain patents. A dispute arose in 1938 as to the amounts to be paid. The taxpayer refused to make further payments until the dispute was settled, but set up an accrued royalty expense account to which it made, and deducted on its returns, annual additions which by 1948 aggregated $129,889.66. In 1949, the Commissioner disallowed further deductions and the taxpayer ceased making annual payments. In 1962, the taxpayer restored the $129,889.66 to surplus and the court held that the taxpayer realized income in the amount of the restoration in that year, stating (430 F.2d at 154):

The parties agree that a previously deducted liability expense is "recovered" and income realized when the liability terminates as a practical matter. The taxpayer's disregard of the liability and use of the money for his own purposes is the factor usually relied on as indicative of such a termination.

Conversely, in *Wichita Coca Cola Bottling Co. v. United States*, 152 F.2d 6 (5th Cir. 1945), cert. denied 327 U.S. 806 (1946), which involved an income item, the taxpayer required a deposit on bottles delivered to its customers and the amounts of the deposits were credited to a reserve account. Each year the deposits exceeded the value of the bottles returned by the customers. On examination of taxpayer's returns for 1937, 1938, and 1939, the Commissioner determined that the increases for those years were taxable income and transferred such increases to profit. In 1940, the taxpayer closed the balance of the account to surplus and contended that such balance was not taxable in that year because it represented gains on sales in years prior to 1937 for which the statute of limitations had run. Holding otherwise, the court said (152 F.2d at 8):

If the balance [in 1940] was an aggregate of old deposits, the book entry closing them out and putting the money to free surplus funds was not mere bookkeeping, but a financial act, as though a bank could and did transfer to its surplus old deposit accounts as barred or abandoned. Such a financial act creates income in the year in which it is done.

In *Commissioner v. Dallas Title & Guar. Co.*, 119 F.2d 211, 214 (5th Cir. 1941), affg. 40 B.T.A. 1022 (1939), where the taxpayer transferred a premium reserve account to its undivided profits account, the court said:

The release of a reserve built up from deductions from income has the same effect for federal taxation purposes as any other receipt of income. * ᴴ *

See also *Wichita State Bank & T. Co. v. Commissioner*, 69 F.2d 595, 596 (5th Cir. 1934), revg. 27 B.T.A. 822 (1933), cert. denied 293 U.S. 562 (1934); *Charleston & W. C. Ry. Co. v. Burnet*, 50 F.2d 342, 343 (D.C. Cir. 1931), affg. 17 B.T.A. 569 (1929); *Weyher v. Commissioner*, 66 T.C. 825, 829 (1976) (assumption of liability may constitute a recovery); *Tennessee Carolina Transportation, Inc. v. Commissioner*, 65 T.C. 440, 447 (1975) (it is not necessary that the taxpayer actually receive money or property to have income recognition); *Mayfair Minerals, Inc. v. Commissioner*, 56 T.C. 82, 87 (1971), affd. per curiam 456 F.2d 622 (5th Cir. 1972).

Petitioners argue, however, that these principles do not apply on the ground that the inclusion of the estimated future development expenses in the cost of lots sold was erroneous in the first instance. Petitioners maintain that the partnership's accountant erred in setting up and deducting, as part of the cost of lots sold during 1962 through 1971, a proportionate part of the reserve for anticipated costs of developing Canyon Hills. They contend that there is no provision for the creation of such a reserve unless the seller is contractually obligated to incur the expenses and consents are executed to leave open the statute of limitations on the intervening years, citing Mim. 4027, XII-1 C.B. 60 (1933), and Rev. Proc. 75–25, 1975–1 C.B. 720. Petitioners maintain that respondent's recourse was to correct the partnership's errors in computing its basis for the lots sold during 1962 through 1971. However, petitioners point out that the statute of limitations has now run on the assessment of deficiencies for those years and argue the partnership's error cannot be corrected by increasing 1972 income by the amount of the unexpended reserve.[3]

---

[3] See *Schuster's Express, Inc. v. Commissioner*, 66 T.C. 588 (1976), affd. 562 F.2d 39 (2d Cir. 1977), which held that a taxpayer could not be required under sec. 481 to include in a later year's income improper deductions taken in prior years which would never be restored to income under the taxpayer's method of accounting.

We do not agree. Where a subdivision is being developed, the reasonably anticipated development expenses, as well as the land costs, may be apportioned equitably among the individual lots and deducted as part of the costs. Rev. Proc. 75–25, *supra,* which supplanted Mim. 4027, *supra,* deals with estimated costs of future improvements that the taxpayer is contractually obligated to make and contemplates that the taxpayer will agree to a waiver of the statute of limitations on assessments. But this Court has held that the rule permitting the equitable apportionment and deduction of estimated development expenses as part of the cost of lots sold is not limited to those situations where waivers of the statute of limitations are filed.

In *Cambria Development Co. v. Commissioner,* 34 B.T.A. 1155 (1936), the taxpayer sold lots, agreeing in the contracts of sale to grade streets and install water mains. The taxpayer set up a reserve account to reflect the unexpended portion of an estimate of the grading and installation costs. Holding that the taxpayer was entitled to include its estimate of future expenditures in the cost of the lots that were sold, the Court said (34 B.T.A. at 1157):

The respondent's disallowance is predicated upon the view that no estimate of future expenditures whatever may be included in the petitioner's cost, and in defending this view he urges that at most such inclusion is a gracious privilege which the Commissioner by his regulations has heretofore granted, but that the grant is upon the express condition stated in Mim. 4027, XII–1 C.B. 60, that petitioner must file a waiver of the statute of limitations, which it has not done. It is well established that as a matter of law the petitioner has the right to include in its cost such estimated future expenditures for the development of the property as required by its contracts of sale.

See also *Jefferson Memorial Gardens v. Commissioner,* 390 F.2d 161, 166 (5th Cir. 1968), affg. in part and revg. in part a Memorandum Opinion of this Court; *Mount Vernon Gardens, Inc. v. Commissioner,* 298 F.2d 712, 718 (6th Cir. 1962), revg. 34 T.C. 598 (1960); *Herzog Building Corp. v. Commissioner,* 44 T.C. 694, 702–703 (1965); *Colony, Inc. v. Commissioner,* 26 T.C. 30, 44 (1956), affd. on other issues 244 F.2d 75 (6th Cir. 1957), revd. on other issues 357 U.S. 28 (1958); *Country Club Estates, Inc. v. Commissioner,* 22 T.C. 1283, 1294 (1954); *Delone v. Commissioner,* 6 T.C. 1188, 1194 (1946), revd. on other grounds 100 F.2d 507 (3d Cir. 1938); *Birdneck Realty Corp. v.*

*Commissioner,* 25 B.T.A. 1084, 1090 (1932). While copies of the contracts of sale which the partnership in the instant case executed when it sold lots from Canyon Hills are not in the record, Haynsworth testified that the partnership agreed to complete the improvements for which the reserve was established.[4] Under the cases cited above, that is sufficient to support the reserve.

Citing Rev. Rul. 70–7, 1970–1 C.B. 175, petitioner also argues that respondent, in essence, is seeking by indirection to reopen the closed years 1962 through 1971 and tax in 1972 the excessive amounts claimed as basis for the lots sold in those earlier years. That revenue ruling states:

An erroneous cost basis of subdivided lots sold in years barred by statute for deficiency assessment cannot be corrected; cost basis of remaining lots is determined by equitably apportioning the actual cost of the entire tract to each of the original lots.

We do not agree.

Under section 1001(a),[5] the gain from the sale of property is defined as the "excess of the amount realized therefrom over the adjusted basis." Section 1012 provides generally that the basis of property shall be its cost. In dealing with the sale of parts of a larger property, such as lots from a subdivision, section 1.61–6(a), Income Tax Regs., provides:

When a part of a larger property is sold, the cost or other basis of the entire property shall be equitably apportioned among the several parts, and the gain realized or loss sustained on the part of the entire property sold is the difference between the selling price and the cost or other basis allocated to such part.

Section 1016 provides for adjustments for expenditures properly chargeable to the capital account which, under sec. 1.1016–2, Income Tax Regs., include the cost of improvements or betterments made to property. See *Commissioner v. Cedar Park Cem. Ass'n,* 183 F.2d 553, 558 (7th Cir. 1950), affg. a Memorandum Opinion of this Court; *Commissioner v. Laguna Land & W. Co.,* 118 F.2d 112, 117 (9th Cir. 1941).

---

[4] Haynsworth testified:

Q. When you sold these lots to builders, was it either in the sales contract or the understanding with them that you would complete the improvements?

A. Yes.

[5] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

Making the allocation required by these provisions requires the exercise of judgment, and errors of judgment as to the proper allocation inevitably occur. Where errors are made in allocating the cost basis in years later barred by the statute, Rev. Rul. 70–7, *supra,* states they cannot be corrected by allocating to each of the original lots amounts less than an equitable apportionment of the cost of the entire tract. But this has nothing to do with estimating and deducting subdivision development costs and, more specifically, the creation of a reserve which serves to reduce taxable income in earlier years and the closing of that reserve in a later year. We do not hold that the basis of the lots sold in 1972 may be recomputed. We hold only that the closing in 1972 of the reserve account set up as an estimate of anticipated development expenses required the partnership (or petitioners) to take into ordinary income in that year the excess, deducted as part of the cost of lots sold, of the balance of the account "Provision to develop Canyon Hills" over the balance of the account "Canyon Hills Development Cost."

To reflect the foregoing,

*Decision will be entered for the respondent.*