HINSHAW'S INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hinshaw's, Inc. v. Commissioner
Docket No. 1523-92
United States Tax Court
T.C. Memo 1994-327; 1994 Tax Ct. Memo LEXIS 335; 68 T.C.M. (CCH) 108; July 18, 1994, Filed *335 Decision will be entered under Rule 155. For petitioner: William Graham. For respondent: Terri A. Merriam and Laurel M. Robinson. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1988 and 1989 of $ 166,347.19 and $ 173,821.63 respectively. The issues for decision are: (1) Whether all amounts collected by petitioner from customers for long-term vehicle service contracts (hereinafter VSC) must be included in gross income in the year of receipt under section 61. [1] We hold that all such amounts are includable in income in the year of receipt. (2) Whether payments made to third parties for insurance required by State law for the VSC's are (a) deductible at the time of payment to the insurance company, that is, at the initiation of the contract; or (b) amortized over the life of the VSC's. We hold that they are to be amortized over the life of the VSC's. (3) Whether payments made to third parties to administer the VSC's are (a) deductible at the time of payment, that is, at the initiation of the contract; (b) amortized over the life of the VSC's; or (c) deductible only at the end of the term *336 of the VSC's. We hold that they are to be amortized over the life of the VSC's. (4) Whether the reserve account PIPI [2] held for petitioner's benefit for tax years 1988 and 1989 was a self-insurance reserve account owned by petitioner. We hold that it was not. (5) Whether the $ 4,000 distributed by PIPI to petitioner's shareholder Paul Hinshaw was income to petitioner in 1988. We hold that it was. Both parties and this Court agree that petitioner's general business credit should be increased for 1988, due to the increase in petitioner's income. This is a mechanical, mathematical calculation to be recomputed in the Rule 155 calculation ordered herein. FINDINGS OF FACT *337 Hinshaw's, Inc., is a Washington corporation with its principal office located in the State of Washington at the time it filed its petition. Petitioner is an accrual basis taxpayer with a calendar yearend. Petitioner's primary business is the retail sale of Honda automobiles and motorcycles, the sale of used automobiles and motorcycles, and parts and repair services. In addition, petitioner makes VSC's available to purchasers of petitioner's new and used vehicles. The VSC's are between petitioner and its customer, and require petitioner to repair, replace, or arrange for the reimbursement of pre-approved vehicle service in the event of a mechanical breakdown listed in the VSC but not covered by the vehicle manufacturer's warranty. The price of the VSC was negotiable between petitioner and its customer. During the years at issue, 1988 and 1989, Honda Motor Co., the manufacturer of the Honda vehicles, did not offer an extended warranty or service contract program. Petitioner was contacted by the representatives of third parties who desired to insure petitioner's liability under the VSC's and administer the claims under the contract. The insurance was to be provided by an insurance *338 company and a related but separate administration company would perform the administrative duties. Petitioner evaluated the offered programs and chose the particular programs that would administer and insure the VSC's into which petitioner entered with its customers. Petitioner signed separate contracts with the administrators and insurers even though each insurer had a related administration company that administered only the related insurance company's claims. The administrators provided petitioner with the necessary VSC forms, rate or cost charts, procedure manuals, training materials, and promotional materials. During the years in question, petitioner contracted to participate in four [3] different VSC programs. The chosen programs were marketed under the names "PIPI" and "The Covenant Group" for automobile VSC's, and "Zone West" and "Aftercare" for motorcycle VSC's. Petitioner is not related to any of these four insurance/administrator groups. *339 Once a customer agreed to purchase a vehicle, petitioner's salesperson, who was assigned as a VSC salesperson, offered the VSC to the customer. If the customer chose to purchase the VSC, the VSC salesperson would negotiate a price with the customer; complete the paperwork with the customer; and then return the customer to the vehicle salesperson for delivery of the vehicle. Per stipulation the following amounts were paid to the four insurance groups for administrative fees and insurance for the years at issue: Group
1988
1989
PIPI
$ 234,947.43
$ 237,104.60
The Covenant Group
20,469.60
4,110.00
Zone West
7,380.00
12,092.00
Aftercare
4,110.42
--
Total
266,907.45
253,306.60
These amounts are substantially less than the amounts reported in the notice of deficiency -- $ 533,634 and $ 474,926 respectively for 1988 and 1989 -- that respondent has disallowed as not constituting ordinary and necessary business expenses. Respondent issued a statutory notice of deficiency to petitioner. In the notice, respondent determined deficiencies in petitioner's 1988 and 1989 Federal income tax. Respondent determined that expenses of $ 533,634 and $ 474,926, deducted respectively *340 for 1988 and 1989, were not ordinary and necessary business expenses; that $ 4,000 distributed from the PIPI extended service contract reserves to petitioner's shareholder Paul Hinshaw was gross income to petitioner, unreported by petitioner on its 1988 tax return; and that the general business credit for 1988 must be recalculated in light of the above adjustments. OPINION Issue 1. Are All VSC's Receipts Included in Gross Income
Petitioner notes that Washington State law, as a consumer protection measure, requires that automobile dealers who sell VSC's must purchase insurance protection from a State licensed insurance company for each service contract sold. For this reason, petitioner contends that the funds it receives from customers for the VSC's are subject to a substantial restriction. Thus, petitioner contends the amounts that it reports as income should be shown net of amounts paid for the State-mandated insurance protection. Alternatively, petitioner asserts a "substance over form" argument, whereby petitioner was actually acting as an agent for the insurance companies, and thus only the net amounts received from customers for the VSC's are includable in income. *341 Respondent observes that the service agreement was a contract that was entered into between the customer and petitioner with no substantial restrictions placed by the contracting parties. Respondent contends that the State law requirements are mandates outside of the contracting relationship. For this reason, respondent asserts that petitioner was not a mere conduit; instead, all events have occurred for the accrual basis petitioner to recognize the service agreement income upon receipt. See Schlude v. Commissioner, 372 U.S. 128 (1963). Petitioner believes that the doctrine of claim of right operates to allow petitioner to report the net income received due to the VSC's rather than the gross income. In effect, petitioner asserts a conduit theory. The insurance bought by petitioner to protect the customer was required by State law. Therefore petitioner asserts it was only a conduit through which the insurance payments passed, because as petitioner collects the money from the customer, some of it is paid to the insurance company as a requirement of State law. We find petitioner's argument to be unsupported by any code section, regulation, or case *342 law. Contrary to petitioner's position, we note that there are a number of State and Federal laws with which any business must comply. As examples, employers must pay the employer's portion of FICA (Federal Insurance Contributions Act); the costs to comply with OSHA (Occupational Safety and Health Act) requirements; and State income tax, as applicable. The costs to comply with these various Federal and State laws are not subtracted to arrive at the gross income of a business. Alternatively, petitioner argues that it was acting as an agent of the various insurance companies from which it bought policies, and thus VSC income should be reported net of the insurance costs. This argument is not persuasive. In our analysis, we start with the basic proposition that income is taxed to the person who earned it. Lucas v. Earl, 281 U.S. 111, 114-115 (1930). This proposition has been described as "One of the primary principles of our system of income taxation". Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980). Thus, when income has been assigned to another, "The choice of the proper taxpayer revolves around the question *343 of which person * * * in fact controls the earning of the income rather than the question of who ultimately receives the income." Id.; Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164. In the instant case, there is no question that petitioner's efforts produced the income at issue. Petitioner, through its own salespeople, offered and sold VSC's. The VSC, on its face, declared that it was not an insurance policy. Petitioner sold the VSC to its customer, the contract was made between petitioner and its customer, petitioner received the money from its customer, and the customer had a right to enforce the contract against petitioner. Petitioner bought insurance from a third party and arranged for a third party to administer the claims generated by the VSC's. To counter these arguments, petitioner asserts the customer did potentially have a third party claim against the insurance company if it did not properly perform under the VSC. And the VSC package -- from forms, to training, to insurance, to administration -- was offered to petitioner as a single unit by each of the four groups *344 involved in the instant case. However, petitioner was primarily liable under the VSC's. Here, petitioner's efforts produced the income since its own salespeople presented the program to its customers, and the contract was between petitioner and its customers. Thus petitioner is taxable on the VSC income. Petitioner has identified no exception to section 61 to indicate that petitioner should not be taxed on this income. For the above reasons, we hold that all amounts collected by petitioner from its customers for VSC's must be included in petitioner's gross income in the year in which the income was received by petitioner. Issue 2. When Are Insurance Payments Deductible
Petitioner asserts that if these costs are not allowed to be netted with gross receipts to arrive at gross income, these costs should be deductible as ordinary and necessary business expenses under section 162 in the year that they are paid. Respondent contends that the costs paid for insurance constitute a prepaid expense for which there is a benefit that will extend over several years; thus the cost of the insurance should be amortized over the life of the policy. To support its contentions petitioner *345 relies on a revenue notice, Notice 88-86, par. IV(G), 1988-2 C.B. 401, 408, regarding the capitalization of intangibles related to a taxpayer's manufactured tangible items, and cases regarding financial institutions. None of these is on point, nor can they be properly analogized to petitioner's situation. The primary financial institution case cited by petitioner is not on point. See Wichita State Bank & Trust Co. v. Commissioner, 69 F.2d 595 (5th Cir. 1934), affg. in part and revg. in part 27 B.T.A.822 (1933). In Wichita State Bank the bank was required by State law to participate in either some kind of insurance or a fund to make sure that its depositors would be protected. The bank chose to participate in the fund and was required to make a long-term investment in the fund and then to make certain payments as other participants in the fund failed and money had to be paid to depositors of the failed bank. The court held that the long-term fund investment was a capital asset and thus not deductible, while current payments into the fund were currently deductible. This case supports the proposition that insurance *346 that has a long-term benefit cannot be currently deducted -- a point that supports respondent's position more than petitioner's. Respondent contends petitioner acquired a long-term asset by purchasing insurance covering a period in excess of 1 year, citing Higginbotham-Bailey-Logan Co. v. Commissioner, 8 B.T.A. 566 (1927). We agree. Petitioner entered into contracts with its customers that required petitioner to protect the customers from vehicle service costs for up to 7 years. Petitioner then purchased insurance to protect itself from having to pay those costs; instead, the costs would be paid by an insurance company. Since petitioner will benefit from this coverage for more than 1 tax year, petitioner must capitalize the cost of the insurance. See sec. 1.461-4(g)(5), (8)Example (6), Income Tax Regs. We hold that the cost to purchase insurance is amortizable over the life of the VSC. Issue 3. When Are Administration Expenses Deductible
Petitioner asserts that if the administrative fees are not allowed to be netted with gross receipts to arrive at gross income, then these expenses should be deducted in the year paid. Respondent *347 contends that the costs paid at the beginning of the policy for administrative fees should only be deducted at the end of the policy life. Respondent reasons that there are no ascertainable dates when the services will be provided, and for this reason there is no definable date that the administrative fees should be deducted until the contract has expired. As indicated by respondent, when a taxpayer uses the accrual method of accounting, the "all events test" is used to establish the date the liability becomes deductible. This test is met when the taxpayer establishes that "all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability." Sec. 1.461-1(a)(2), Income Tax Regs.
Administrative fees were paid. The benefit of the administrative costs, like that of the insurance premiums, will be received over a number of years. For this reason, we hold that payments of administrative fees, like the insurance costs, are amortizable over the life of the policies. Issue 4. PIPI Reserve Account
Petitioner asserts that the PIPI reserve *348 accounts are not in its control, that only PIPI is liable for future costs, and thus, that amounts paid to PIPI are deductible, as were costs paid to the other insurance/administrator groups. Respondent contends that the PIPI reserve account was, in effect, a self-insurance account and as such was not deductible until the actual expenses occurred. PIPI maintained reserves that were calculated by its personnel, similar to reserves maintained by each of the other three groups. The difference between PIPI's contract and the other three contracts was that at the end of the service contracts PIPI could choose to remit to petitioner any amounts in excess of the amounts needed to complete the service contracts once the term of the contract with petitioner's customer had expired. Respondent contends an issue in a recent opinion from this Court, Wright v. Commissioner, T.C. Memo. 1993-328, is identical to the issue here. We disagree. Wright involved a transaction with a company that chose to place the insurance remittances into an annuity. The annuity was funded so that it would pay claims as they were projected to come due. The interest on the annuity *349 belonged to the Wright dealership. However, the dealerships could not use the principal of the annuity until the VSC was terminated; then the remaining principal would be refunded. In the Wright case there was no shifting of risk to the insurance company. Id. Here, PIPI did not put the money into an annuity, and respondent has not shown that interest on the account, if any, was credited to petitioner. In order for a contractual relationship to qualify as insurance, there must be some indication of risk shifting and risk distribution. Helvering v. Le Gierse, 312 U.S. 531, 539 (1941); Steere Tank Lines, Inc. v. United States, 577 F.2d 279, 280 (5th Cir. 1978). "It is undisputed that the definition of insurance means the shifting of risk and that the insurance premium is the cost of providing for the shifting of risk." Clougherty Packing Co. v. Commissioner, 84 T.C. 948, 958 (1985) (citing Steere Tank Lines, Inc. v. United States, supra), affd. 811 F.2d 1297 (9th Cir. 1987). Here there is a shifting of risk; PIPI is obligated to pay the VSC claims, *350 and if those claims are in excess of the amounts petitioner pays to PIPI, then PIPI pays that expense. If those claims are less than the amount paid to PIPI, PIPI can choose to distribute the excess, or some portion thereof, back to petitioner. The evidence shows that PIPI is not related to petitioner. Also, as reflected in issue 5, the amount of the distributions in regard to this fund is small. Per stipulations, petitioner paid PIPI $ 234,947.43 in 1988; $ 4,000 or a little less than 2-percent was paid to Paul Hinshaw in regard to issue 5 in 1988. We hold that petitioner did not control the reserve accounts, risk did shift to PIPI, and thus the amounts paid to PIPI are to be amortized as indicated in issues 2 and 3 supra. Issue 5. $ 4,000 Distribution
On brief, petitioner concedes that the $ 4,000 paid to Paul Hinshaw is income if the Court holds for petitioner in issue 4, which we did. However, petitioner then contends that there should be a concurrent $ 4,000 salary deduction. Respondent contends that there should be no salary deduction. Paul Hinshaw testified that effective August 1986, he was no longer an employee of petitioner, Hinshaw, Inc., but instead *351 he was then employed by Hinshaw Motor Co. Mr. Hinshaw was a 20-percent shareholder of petitioner during the years in question. Petitioner presented no proof that there was a salary payment or any other deductible payment to Mr. Hinshaw in 1988. For the above reasons, we hold that petitioner received $ 4,000 in income in 1988, due to the distribution. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. As indicated herein, PIPI is one of the insurance/administrator groups that petitioner contracted with to provide VSC services.↩
3. Per stipulations a fifth company was employed, but it is ignored due to the de minimis amounts involved in the transactions.↩