FRANCISCO SUGAR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8892.   Promulgated January 8, 1929.

*Arthur Rothstern, Esq.*, and *Harry S. Liese, Esq.*, for the petitioner.

*Maxwell E. McDowell, Esq.*, and *C. C. Holmes, Esq.*, for the respondent.

OPINION.

PHILLIPS: At the hearing the respondent conceded that the computation of the deficiency was erroneous in two respects, leaving only for consideration the question whether the petitioner may inventory materials, supplies, and repair parts at cost or market, whichever is lower, and claim as a deduction the difference between such inventory value and the cost thereof. In years prior to that in question no effort had been made to value such items at other than cost, the testimony being that in such prior years the market value was at least as great as cost. The occasion for an inventory at June 30, 1921, at other than cost was a drop in market prices which took place during that year.

The testimony discloses that because petitioner's operations were carried on so far from a source of supply, it was necessary for it to carry large supplies for the repair, maintenance and operation of its facilities. These included its mills, railroad, electric power plant and telephone equipment. It is also clear that the greater part of the items in question would be used up within the following year. The Commissioner allowed it to inventory its sugar and sugar by-products at cost or market, whichever was lower, and the sole question before us is whether the items in question may be inventoried on the same basis.

Under the income-tax laws it is generally true that gains are not to be included in income until some transaction takes place by which such gain is realized and, conversely, losses are not deductible until sustained in a like manner. Fluctuations in value ordinarily play no part in the computation of taxable income. In this respect, as in many others, the computation of net income for tax purposes may differ from the computation of net income for other purposes. For this reason that which constitutes good accounting for certain purposes may not be proper accounting in computing taxable net income.

In section 203 of the Revenue Act of 1921, provision is made for a departure from the general rule that property must be disposed of before taxable income is affected. That section reads:

SEC. 203. That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Pursuant to such authority articles 1581 and 1582 of Regulations 62 were promulgated, the material portions of which are as follows:

ART. 1581. *Need of inventories.*—In order to reflect the net income correctly, inventories at the beginning and end of each year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption, or use in productive processes, together with all finished or partly finished goods. * * *

ART. 1582. *Valuation of inventories.*—The Act provides two tests to which each inventory must conform: (1) It must conform as nearly as may be to the best accounting practice in the trade or business, and (2) it must clearly reflect the income. It follows, therefore, that inventory rules can not be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations. An inventory than can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income.

The basis of valuation most commonly used by business concerns and which meets the requirements of the Revenue Act is (*a*) cost or (*b*) cost or market, whichever is lower. * * *

It will be conceded, we believe, that under the law and the regulations, fluctuations in the plant, plant equipment and like assets of a taxpayer are not to be reflected in taxable income by the expedient of inventorying them. It will likewise be conceded that goods held for sale, or which are a part of the finished article which is sold, are to be inventoried. Between these two classes of property there are others which fall into neither class and concerning the proper treatment of which there exists a difference of opinion. *Burroughs Adding Machine Co.*, 9 B. T. A. 938. Such items as office supplies, operating supplies, repair parts and others of a like character which are not held for sale in the usual course of trading or which do not enter into the product sold but which are used up in manufacturing, merchandising or other like operations and which finally find their way into the profit and loss account by way of expense rather than

into the trading account by way of cost of materials purchased for sale, are among those which fall within the doubtful class. Within this realm we believe the regulations issued pursuant to the express provisions of the statute to be conclusive. We pass then to a consideration of the question whether the articles here in question are within the regulations.

Among the items on which substantial losses are claimed are lubricating oils, cement, brick, castings, window lights, and iron pipe. The balance, with the exception of some articles held for resale to the farmers who sold their products to petitioner, appears to be mainly for the repair of buildings, machinery, railroad equipment, electrical and power-plant equipment and the telephone system. The inventory also includes spare parts. It is the testimony of the witnesses that all such articles were " consumed or used in productive processes." This, however, is no more than a conclusion on the part of these witnesses upon a matter which this Board must decide and which we may not accept if it appears contrary to other facts in the record. It involves a construction of the regulations to determine what is meant by the words " productive processes."

The territory from which petitioner draws its raw material covers over 100,000 acres. To develop this territory it has installed railroads, telephones, and an electric power plant. These activities, however, are incidental to its business which is that of raising and purchasing sugar cane, manufacturing that cane into raw sugar and its by-products and selling those products. The operation of these facilities may be necessary to the conduct of its business but it is obvious that the regulation does not cover all operations which are necessary. The word " processes " is in itself more restricted than " operations " and this is further restricted by the qualifying adjective " productive." We must have a process which produces.

The question before us is primarily one of degree. If it be conceded that the mill plants are engaged in productive processes; still they are not " consumed or used " in that process as those words are very evidently used in the regulations. It could scarcely be contended that the fixed assets may be inventoried on the ground that they are used in the productive processes. This would seem, however, to be the logical application of the construction for which petitioner contends, for such assets are consumed or used in the productive processes in the same manner as are parts which are used for replacements and repairs.

We have in the record the testimony of four accountants that an inventory of materials and supplies such as we have here is properly taken on the basis of " cost or market, whichever is lower " and that a balance sheet which included such an inventory at cost would not correctly reflect the financial position of the petitioner. It may be

conceded that if these supplies and materials are to be included by way of inventory, and therefore treated as current assets, this position is correct. The real difference between accountants does not seem to be the basis on which an inventory would be taken, but whether good accounting requires such items to be inventoried and included as current assets. It is doubtful if they fall within that class since they do not represent assets which may readily be realized upon. See texts cited in *Burrough's Adding Machine Co.*, *supra*. They are more properly classified as prepaid expenses. There is nothing which would indicate that a balance sheet which included them as prepaid expenses or deferred assets, at cost, would be deceptive, misleading or incorrect. In our opinion it would be less misleading than a description which read "Inventory of materials and supplies consumed or used in productive processes." The text books on accounting indicate that some accountants would inventory such items as are here in question. Others would treat them as deferred expenses. There is no such unanimity as would require us to say that the Commissioner's regulations are contrary to the best accounting practice.

We reach the conclusion that the contentions urged by petitioner must fail because the items in question are not consumed or used in productive processes, as those words are used in the regulations, and therefore are not properly to be accounted for as inventory for income-tax purposes and because it appears that such regulation is not violative of the provisions of the statute when it excludes from inventory such items as those here in question.

Some of the articles included in the inventory were held by petitioner for resale to farmers at cost. The losses claimed on the articles identified as held for this purpose are so negligible as to be immaterial, except for certain French and native tile, concerning which the witness, Jareckie, who does not appear to have been in Cuba at the time the inventory was taken or to have had any part in taking it, testified, "I would say they were for sale to the colonos (farmers) for repairs to their buildings. Their buildings have either tile or thatched roofs." His testimony indicates that while he was familiar with the inventory in a general way, he was dependent upon his own conclusions from the nature of the article in determining whether such articles were for the use of the petitioner or for sale to the farmers. At the time such testimony was given, he was attempting to eliminate from the inventory all items which were not for the use of the petitioner and, in case of doubt, apparently wished to err on the side of exclusion. The answer of the witness leaves some doubt in our minds whether he knew whereof he spoke; a doubt we have had no opportunity to remove, since all of the testimony was taken by deposition.

Aside from these considerations, we do not understand that the regulations which permit inventories relate to such items as those held for resale to farmers. The petitioner's business was the production and sale of raw sugar. Its sales to farmers were a matter of convenience, made to maintain good will. The first sentence of article 1581 indicates that inventories are to be taken where the production, purchase, or sale of merchandise is an income-producing factor. Here no income was expected. Sales were made at cost. The action of the Commissioner is sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*