## FRANCISCO SUGAR CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 20.

Circuit Court of Appeals, Second Circuit.

Feb. 2, 1931.

556 .

steadiness of its supply of cane,. a benefit which appears in the general profit of its business.

·In addition, because of the remoteness of its plants from the United States, where alone they can be purchased, it maintains its own stock of supplies for current use. These are also a variegated assortment. Besides its buildings and apparatus for storing, grinding and concentrating, it has a telephone system of its own, a railroad, an electric and power development station, and in general the paraphernalia necessary to the conduct of a very large business situated in a remote place where manufactured goods are not procurable, and whither they must be imported. Examples of what it keeps on hand are lubricating oil for its machinery, chemicals to test its sugars during manufacture, bricks and cement for the upkeep of its buildings, bolts, nuts, valves, pipes, pumps, and fabricated parts for the repair of its machinery, of its locomotives and of its electric and telephone plants, as well as a miscellaneous lot of other goods, not fully disclosed in the record. These are all ancillary to the production of sugar, and are used when needed; but they are not, with the possible exception of the chemicals, physically incorporated into the sugar made and sold.

The company had always kept an inventory of both classes of goods, and as the values had not theretofore varied, it had kept them at cost; but during the year in question they decreased materially in value, and this decrease appeared in the inventory, which, though theoretically kept "at cost or market value, whichever was lower," for the reason just given had theretofore shown only cost. The Commissioner disallowed the deduction so appearing, and assessed the tax accordingly, saying that "no proof of inventory reduction had been submitted." This the Board affirmed, because neither class of goods was in its opinion within article 1581 of the Regulations, promulgated under section 203 of the Act of 1918 (40 Stat. 1060).· The petitioner thereupon appealed.

 The first point is that the Board had jurisdiction to do no more than consider whether there was proof of the inventory reduction, the Commissioner having ruled that the regulation covered both classes. The argument runs that the Commissioner alone is charged with the duty of deciding whether an inventory, as kept by the taxpayer, is in accordance with the best accounting practice, and that he has decided that this one was.

Herman Goldman, of New York City (Benjamin Wiener, of Brooklyn, N. Y., and Elkan Turk and Arthur Rothstein, both of New York City, of counsel), for appellant.

·ɟ G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. K. Polk, both of Washington, D. ·C., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The petitioner is a New Jersey corporation, whose principal place of business is in New York; it does an extensive business in Cuba in the manufacture of sugar. Its grinding plants are there, and it has as tributary to its own land, some òne hundred thousand acres, occupied and owned by Cuban peasants ("colonos"), on whose production of cane it depends for part of its supply. To secure and maintain the good will of these it has found it convenient, perhaps necessary, to act as a general merchant for their wants, holding in stock a large assortment of manufactured tools, building supplies, and other articles, which are otherwise inaccessible to them. These it sells to them at their cost; that is, at the purchase price with the expenses of merchandising added. Upon them in consequence it makes no profit, realizing indirectly, through the consequent

Since his refusal was only because the petitioner's proof was insufficient, it followed that he had ruled in the taxpayer's favor upon the scope of the regulation, and this concluded the Board. There are two answers to this. First, the Commissioner's power to promulgate regulations is to be exercised only with the concurrence of the Secretary, and while they stand they have the force of law. He has no power independently to ignore a regulation, and there is no reason to suppose that he attempted in this case to do so. On the other hand his interpretation is as subject to review, as his construction of any other provision of law, though it is, as always, entitled to much presumptive weight. So far as his action involved an interpretation, the Board, and we in turn, may therefore review it. Second, it does not at all follow, because he found the proof of loss insufficient, that he positively determined the inventory to have been within the statute or the regulation. He may not have found that question necessary to decide, once he had concluded that the evidence did not show any proof of loss. Like a court, he may dispose of a case on one ground without reaching the others at all.

We proceed therefore to the merits. As to the first class—the stock held for sale for the "colonos"—it seems to us that the Board was right in its interpretation of the regulation. The words are: "Inventories at the beginning and ending of each year are necessary in every case in which the production, purchase or sale of merchandise is an income-producing factor. The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption, or use in the productive processes together with all finished or partly finished goods." The petitioner's argument is that these goods were held for sale as "an income-producing factor," since they were a necessary incident to the sale of the sugar, which produced the income. But it is plain that the regulation did not cover all goods which might be so held, merely because accountants would carry them in an inventory. Possibly a stock of prizes or gifts held for distribution among these simple people might have been as convenient, or even as necessary, for the maintenance of the company's good will; or a store of medical supplies for a free dispensary. No one could say that these should be included; they would not be sold at all. The statute does not put the matter wholly into the hands of accountants; rather it imposes upon the Commissioner and the Secretary the duty of promulgating controlling regulations, though these no doubt must accord with good accounting. In their interpretation, accounting practice is a legitimate resort; but so far as they speak, they govern, unless they are invalid because of departure from the statute. In the absence of a successful attack upon their validity, they constitute the primary source of authority and, as the statute was later re-enacted, they have received the approval of Congress. Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457.

In the first place it does not appear that the decrease in value of this class of goods reflected any real loss to the taxpayer. That would depend upon whether it lowered its price to the "colonos," as the goods fell in value, or could not sell at cost. It is extremely unlikely that, situated as these were, they could get substitutes at the market value in the United States. We are not clear therefore that such an inventory correctly represents the income. As a whole, it is true that the business was one in which "the production * * * of merchandise was an income-producing factor." Such goods are "supplies on hand which have been acquired for sale," or they are "finished goods," but we think that "sale," as applicable to this situation, means one which produces some income. We are encouraged so to rule because, as we have said, a stock, held for distribution, would clearly not be covered, though that would probably do as much violence to accounting practice as to exclude these. In general, sale implies the motive of profit; to extend it to such a case as this is beyond its usual significance.

As to the second class, we think that the Board has taken too narrow a view of the phrase, "consumption or use in the productive processes." Oil needed to keep machinery going, bolts without which it will not go, fabricated parts which must be restored, pumps to keep out water, wiring for dynamos and generators, all these seem to us to be consumed and used in production, though they do not physically become a part of the finished product. So close a construction hardly corresponds with any of the commercial actualities which the regulation was designed to meet.

Another and more difficult question arises, however, from this interpretation of the regulation. It does not follow, because the second class are supplies consumed or used "in the productive processes," that all of them may be inventoried. That we think depends upon proper accounting practice,

which should here be used to interpret the regulation. Such supplies may be of various kinds, at either end, as it were, of the scale. A stock of stationery should not for instance be inventoried; it is more properly carried as a "deferred expense." Its value will probably not much vary, and in any event its amount does not usually justify annual appraisals. At the other end are articles which are properly held for plant account, and reckoned as part of fixed capital. Such things as bricks and mortar, window frames and the like, may fall within this class. Intermediate are probably most of the goods here involved.

It is obviously impossible to lay down any rules which can determine which of these should, or should not, be included. Accountants themselves vary, as appeared in Burroughs Adding Machine Co. v. Commissioner, 9 B. T. A. 938, where the question was well considered; an instance where some were allowed is Read Phosphate Co. v. Commissioner, 13 B. T. A. 39. In the case at bar several accountants of unimpeachable standing testified that all of the second class—for that matter, of the first as well—ought to have been carried at cost or market value, and that if carried at cost they would themselves feel obliged to note the fact in order to avoid deception. While the Board is not obliged to accept the estimates of experts [Anchor Co. v. Com'r, 42 F.(2d) 99, 100 (C. C. A. 4)], and we do not say that it must do so here, we must admit that the array presented would have persuaded us of the propriety of the inventory with some possible exceptions, were we primarily charged with decision of the issue.

We understand that the Board did not consider the question which would arise under the view we take of the regulation; that is, whether these supplies could have been inventoried, and which of them should not have been. Perhaps the record made it impossible to separate the items, or to say that all were proper, so that the conclusion reached in Burroughs Adding Machine Co. v. Com'r, supra, may still be the right one here. Differing with it as to the regulation, it seems to us that the proper course is to remand the cause for the purpose of determining how many of the items would be carried as current assets under good accounting practice. If it prove impossible to separate the good from the bad, the taxpayer must lose. In the separation we should ordinarily yield to the Board's decision; it is certainly more familiar than we are with such questions. We have intervened only upon a question of law, not of practical

administration, whose determination we cannot escape.

The order is therefore reversed and the cause is remanded with instructions to determine, so far as the record permits, how much of the second class of goods would under the best accounting practice be carried in inventory. In this determination we do not say that the Board must be bound by the expert testimony, though it seems to us to be of exceptional weight.