## ALUMINUM CO. OF AMERICA v. UNITED STATES.

No. 7765.

District Court, W. D. Pennsylvania.

Oct. 10, 1938.

Smith, Buchanan, Scott & Ingersoll, John G. Buchanan, Paul G. Rodewald, William H. Eckert, and David B. Buerger, all of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. Atty., and Orris Bennett, Sp. Asst. to U. S. Atty., both of Pittsburgh, Pa., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe, William B. Waldo, and M. H. Eustace, Sp. Assts. to Atty. Gen.

GIBSON, District Judge.

By its petition plaintiff seeks to recover income and excess profits taxes for the year 1920, with interest, which it claims were erroneously assessed against it.

The basic question involved is whether supplies, not to become a part of the finished product, were properly included by

the plaintiff in its inventory at the end of the year 1920 at market, then less than cost. The taxpayer inventoried all the materials on hand at that time which were used by it in the manufacture of its products at cost or market, whichever was less, and based its return upon that inventory. The Commissioner of Internal Revenue conceded the propriety of an inventory and the inclusion therein at cost or market, whichever was the lower, of partly manufactured articles and materials to become physical parts of the products, but held that some articles used in the manufacture, but not becoming components of the products, were includible at cost and should not be written down to market. So holding, he assessed a deficiency tax against the plaintiff, and the amount of this tax the plaintiff seeks to recover.

The foregoing, in a general way, states the issues of the instant case. However, the plaintiff now admits that the Commissioner properly disallowed a write-down of $78,037.32 upon items acquired for construction of fixed assets, and the defendant concedes that $24,984.66 of the $667,-423.66 originally disallowed was properly inventoried at less than market, and that $92,215.97 of the original amount found by the Commissioner to have been correctly so inventoried, i. e., $348,210.93, was allowable, but that the balance had been erroneously allowed. The plaintiff's claim is that its income for 1920 was overstated by the Commissioner of Internal Revenue in the amount of $495,114.36, and that it was compelled to overpay its taxes by $138,580.-90.

Another phase of the case relates to interest collected from the plaintiff upon the overpayment. Upon trial the parties were in accord as to this item, the claim to be determined largely upon the decision as to other matters involved in suit.

Section 203 of the Revenue Act of 1918, 40 Stat. 1060, in force for 1920, is as follows: "Sec. 203. That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

Acting upon the foregoing section the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, adopted the following regulations (Reg. 45, Articles 1581–1584):

"Art. 1581. Need of inventories.—In order to reflect the net income correctly inventories at the beginning and end of each year are necessary in every case in which the production, purchase or sale of merchandise is an income-producing factor. The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption or use in productive processes, together with all finished or partly finished goods."

"Art. 1582. Valuation of inventories.—The Act provides two tests to which each inventory must conform—(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and (2) it must clearly reflect the income. It follows, therefore, that inventory rules can not be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation, so long as the method or basis used is substantially in accord with these regulations. An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income.

"The basis of valuation most commonly used by business concerns and which meets the requirements of the Revenue Act is (a) cost or (b) cost or market, whichever is lower.

"In respect to normal goods, whichever basis (a) or (b) is adopted must be applied with reasonable consistency to the entire inventory. * * *

"Art. 1583. Inventories at cost.—Cost means:

"(1) In the case of merchandise on hand at the beginning of the taxable year, the inventory price of such goods.

"(2) In the case of merchandise purchased since the beginning of the taxable year, the invoice price less trade or other discounts, except strictly cash discounts, ap-

proximating a fair interest rate, which may be deducted or not at the option of the taxpayer, provided a consistent course is followed. To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods.

"(3) In the case of merchandise produced by the taxpayer since the beginning of the taxable year (a) the cost of raw materials and supplies entering into or consumed in connection with the product, (b), expenditures for direct labor, (c) indirect expenses incident to and necessary for the production of the particular article, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital whether by way of interest or profit. * * *"

"Art. 1584. Inventories at market.— Under ordinary circumstances, and for normal goods in an inventory, 'market' means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts (i. e., those not legally subject to cancellation by either party) at fixed prices entered into before the date of the inventory, which goods must be inventoried at cost. * * *"

In 1933, in Regulations 77, Article 101, the wording of Article 1581, supra, was changed, reading thus: "The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale."

No dispute exists as to the necessity of the use of an inventory by plaintiff in order to reflect its net income correctly. The sole controversy arises ·from the Commissioner's contention that plaintiff, for tax purposes, was required to carry in its inventory at cost all supplies which did not physically enter into its manufactured products.

■ The first question which presents itself is whether plaintiff's inventory was taken upon a basis conforming to the best accounting practice, as required by Section 203 of the Revenue Act of 1918. As to this phase, the testimony disclosed that the practice of practically all large manufacturing companies was to inventory all supplies at cost or market, whichever was the less. This being so, we may properly adopt the belief that the plaintiff's method did not violate the statute or Article 1582 of the Regulations, supra.

■ We may next consider the consistency, or the reverse of plaintiff's accounting practice, as Article 1582 of the Regulations demands that the inventory practice be consistent from year to year. It is stipulated that the plaintiff inventoried its materials, including the disputed supplies, at cost or market, whichever was lower, for the years 1917, 1918, 1919 and 1920. On the other hand, the Commissioner did not dispute the correctness of this practice until considering the 1920 return; and following that return for that year he refused to add to the opening inventory for 1921 the amount which he had added to the closing inventory for 1920, thus denying to plaintiff the right to reduce taxable income for 1921 the amount which he had increased it for 1920. It would seem, therefore, that the lack of that consistency required by Article 1582 of the Regulations was not that of plaintiff. Its practice was uniform.

While Article 1582 of the Regulations impresses the requirement of consistency in inventory practice, it also demands that such practice be in accord with the requirements of the Regulations. Do the Regulations prohibit plaintiff's inventory practice? Not directly, certainly, and not by implication, giving them any ordinary interpretation. Article 1581 says: "The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption or use in productive processes, together with all finished or partly finished goods."

Article 1583 says:

"Cost means:

\* \* \* \* \* \* \*

"(3) In the case of merchandise produced by the taxpayer since the beginning of the taxable year (a) the cost of raw materials and supplies entering into or consumed in connection with the product. * * *"

■ The last quotation from Article 1583 seems to plainly contradict the contention

of the defendant as to the proper interpretation of the Regulations. If the scrivener of the regulations intended to limit the cost of materials in inventories to those supplies which were to become ingredients in the finished products, he surely would have written: (a) the cost of raw materials and supplies entering into the product, and not "(a) the cost of raw materials and supplies entering into or consumed in connection with the product. * * *" Article 1581 also tends to deny any limitation of supplies to be included in inventory to those becoming part of the finished product. It says: "The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption or use in productive processes, together with all finished or partly finished goods."

Article 1581 of the Regulations came before the Circuit Court of Appeals for the Second Circuit in Francisco Sugar Co. v. Commissioner of Internal Revenue, 47 F. 2d 555, upon review of a decision of the Board of Tax Appeals. The Court held that the Commissioner's interpretation of a regulation was as subject to review as his construction of any provision of a statute, and that he was bound by the terms of the regulation properly promulgated. It further asserted that the Board of Tax Appeals had taken too narrow a view of the phrase, "consumption or use in the productive processes", in Article 1581, in holding that the only supplies which were includible in the inventory were those which physically become a part of the finished product. In its decision the Court of Appeals held that certain articles written down from cost to market were not properly included in the inventory, as they were not consumed or used in the productive processes, but that oil, etc., used in production were includible, although not entering into the physical product. That the decision is correct in respect to Article 1581 seems beyond question when the other regulations, quoted supra, are considered.

Being of opinion that the true income of the petitioner for the year 1920 was shown by consistently following the accounting practice which had been used by it in prior years, and which had been theretofore accepted as correct by the Commissioner of Internal Revenue, the court will enter judgment in favor of the petitioner for the sum of $138,580.90, the amount by which petitioner's tax was overpaid, with interest at the rate of six (6%) per cent. per annum from May 1, 1931. The date from which interest runs has been stipulated by the parties in event judgment is entered for the petitioner.