W. C. & A. N. MILLER DEVELOPMENT COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10934–78.     Filed September 26, 1983.

*John E. Rogers*, for the petitioner.
*Bobby D. Burns*, for the respondent.

SCOTT, *Judge*: Respondent determined deficiencies in the corporate income tax of petitioner W. C. & A. N. Miller Development Co. for its fiscal years ended September 30, 1974, September 30, 1975, and September 30, 1976, in the amounts of $66,922.56, $6,213.12, and $54,309.47, respectively.

The sole issue for decision is whether petitioner is entitled to use the LIFO (last-in, first-out) inventory method of accounting in computing the costs of homes it constructed and sold in various of its real estate developments during the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner W. C. & A. N. Miller Development Co. is a corporation which was duly incorporated under the laws of the State of Delaware on September 2, 1926.

W. C. & A. N. Miller Development Co., at the time of the filing of its petition herein, maintained its principal office in Bethesda, Md. Petitioner filed U.S. Corporation income tax returns for its fiscal years ended September 30, 1974, September 30, 1975, and September 30, 1976, with the Internal Revenue Service Center, Philadelphia, Pa.

Petitioner is engaged in the business of constructing and remodeling residential properties in the metropolitan Washington, D.C., area. Petitioner is primarily a builder of homes

which it sells. Its principal business activity is the development of real estate which it has acquired and upon which it constructs residential homes. During the years in issue, petitioner built only single-family, detached homes. Petitioner has on occasion served as a contractor for the construction of a home on land owned by another. However, such construction work as a contractor is done infrequently and would constitute only a very minimal percentage of its construction during any year.

Petitioner keeps its books and records and files its Federal income tax returns on an accrual method of accounting.

For its fiscal year ended September 30, 1973, and prior years, petitioner accounted for its construction costs using a job cost method. This job cost method functioned in the following manner:

(1) Each home was treated by petitioner as a separate costing unit;

(2) All directly identifiable costs were charged to the particular home;

(3) Variable overhead such as payroll taxes, insurance, overtime, vehicle operating costs, and supplies, were assigned ratably to each home based upon the labor cost component;

(4) Construction and architectural overhead costs were assigned based upon the other costs for the home compared to the total other costs for all homes;

(5) Petitioner accumulated all of its directly identifiable costs, variable overhead costs, and construction and architectural overhead costs for each home; and

(6) All of the costs which had been accumulated for the particular home as a costing unit were charged to cost of sales only at the time of settlement with the purchaser of the home.

This job cost method used by petitioner for its fiscal year 1973 and prior years clearly reflected petitioner's income.[1]

Petitioner filed a timely Form 970—Application to Use LIFO Inventory Method—with its income tax return for its fiscal year ended September 30, 1974. In such application,

---

[1] The parties stipulated to this effect.

petitioner applied to adopt and use the LIFO inventory method provided under section 472.[2] The application stated that such method was first to apply as of the close of petitioner's fiscal year ended September 30, 1974, with respect to its inventory of completed new homes and jobs in progress, exclusive of land costs, as a single natural business unit pool. The application elaborated that the goods subject to inventory which would not be inventoried pursuant to the LIFO method were its building lots, including the various development costs of improvements to the lots such as streets, curbs and gutters, storm sewers, etc., and certain small supply inventories. The application stated that the method to be used in valuing the LIFO inventories was the dollar value method. Additionally, the application stated that petitioner would use one natural business unit pool consisting of all costs, except land costs, incurred in building or remodeling a home, including associated overhead consistently inventoried.[3]

The application stated that petitioner would use the link-chain method in computing the LIFO value of the dollar value inventory pool. This link-chain method was described in the application as follows:

*Description of Link-Chain Used*

The actual inventory in dollars at year end for each subdivision is converted to equivalent finished square feet. This is accomplished by dividing actual inventory dollars by the average finished cost per square foot. The average finished cost per square foot is determined by dividing the estimated total field costs of all houses in inventory by total square feet of all houses in inventory. Method of estimating total field costs and total square feet are explained at the bottom of this description. The equivalent finished square feet of living space is then extended at both the beginning and end of year average finished cost per square foot for each subdivision. The total amount for all subdivisions is obtained. The sum for the end of the year is divided by the sum for the beginning of the year. The result is the price index for the current year. By multiplying each annual index by the prior cumulative index an index is obtained that, when divided into the closing inventory at current costs results in a determination of the closing inventory

---

[2]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years here in issue.

[3]Petitioner has now conceded that the portions of the adjustments made by respondent with respect to the inventorying of accumulated remodeling costs are correct. Therefore, only the question of petitioner's treatment as inventory of completed but unsold homes and homes still under construction, is in issue.

at base prices. To the extent that the closing inventory at base prices exceed the prior years closing inventory at base, an increment results. This increment will be extended at the price index for the current year to determine the amount of the LIFO layer for the current year. If the inventory at base price is less than the opening inventory at base price the decrement will reduce the most recent layer of increment, applying to the decrement at base the index established for that particular layer. If the decrement exceeds the amount of the most recent layer of increment, the preceding layers of increment, in reverse chronological order, will be successively reduced by the amount of the excess until all the excess is absorbed.

The application further stated that petitioner's method of computing square feet was to count all of the finished living areas in a home, but to count only one-half of the unfinished areas of a home, which consisted of the home's basement and its garage.

Petitioner on the application gave the following reasons for using the link-chain method:

1. Each subdivision has a finite life depending upon the number of units that can be constructed and the rate at which the market will absorb these units. The housing to be constructed in new subdivisions may or may not be similar to those currently under construction depending upon the market at that time.

2. Alternate operating methods - Most phases of construction can be subcontracted for or can be performed by the company with its own employees. The particular mix of each house changed and can be expected to continue to change over time.

3. Alternate materials - Many materials will perform the same function. The selection of materials has changed and can be expected to continue to change over time. In review of the foregoing we believe that as the years go by it will become increasingly difficult if not impossible to reconstruct realistic base prices.

The homes we build vary in size, design and materials. However, the quality of construction and basic specifications are consistent within a community (subdivision). The cost per square foot of constructing any particular home within a subdivision falls within a narrow range. * * *

We believe that a sample composed of all homes under construction at yearend provides a sound basis for measuring the impact of inflation upon our inventories. The resulting index is consistent with those published by the Department of Commerce.

At present we build only single family detached housing in our subdivisions. In the event that we build a mixture of housing types in the future (single family attached, Multifamily Low-Rise, Multifamily High-Rise, etc.) we propose to develop costs per square foot for these various types of housing.

On its income tax returns for its fiscal years ended September 30, 1974, September 30, 1975, and September 30, 1976, petitioner computed a yearend inventory which consisted of its accumulated costs for completed but unsold homes and homes under construction. This inventory, valued under the LIFO method, was then used as a part of the determination of petitioner's "costs of goods sold" for the year. The actual cost of its building lots, including direct improvements on such lots, was added to the otherwise computed cost of goods sold.

On its income tax return for its fiscal year ended September 30, 1974, petitioner computed its total cost of goods sold as follows:

*Cost of goods sold*

| | | |
|---|---|---|
| Inventory at beginning of year | | $1,985,936 |
| Cost of sales[1] | | 3,444,235 |
| Commission and fee expenses: | | |
| New construction | $174,638 | |
| Land | 43,740 | 218,378 |
| Repair guarantee adjustment | | 31,652 |
| Total | | 5,680,201 |
| Less: Inventory at end of year | | (2,118,767) |
| *Total cost of goods sold* | | 3,561,434 |

[1] Cost of sales would include the cost of the land (including certain development costs) for those homes completed as of the beginning of the year but sold within the 1974 fiscal year.

On its fiscal year 1974 income tax return, petitioner computed its "LIFO inventory - September 30, 1974" as follows:

| | *LIFO Inventory* - Sept. 30, 1974 | *9/30/74* |
|---|---|---|
| 1. | Beginning inventory, excluding lot costs | $1,609,956.00 |
| 2. | Ending inventory at current costs | 1,886,131.00 |
| 3. | Price index for year, per attached schedule | 108.66 |
| 4. | Cumulative price index (line 3 times line 4 last year) | 108.66 |
| 5. | Ending inventory at base prices (line 2 divided by line 4) | 1,735,810.00 |
| 6. | Beginning inventory at base prices (line 5 of last year) | 1,609,956.00 |

*Increase calculation*
7. Inventory increase at base prices
(line 5 minus line 6) ................................. $125,854.00
8. Inventory increase at end of year prices
[line 7 times (line 4 minus 100)] ................... 10,899.00
9. Ending inventory at LIFO cost
(line 5 plus line 8) .................................... 1,746,709.00

In his notice of deficiency, respondent gave the following explanation for the increases determined in petitioner's taxable income for each of the years here in issue:

It is determined under the provisions of sections 446, 471 and 472 of the Internal Revenue Code that you, as a real estate company, may not use the LIFO method of inventory in computing your cost of goods sold. Therefore, your taxable income is increased as follows:

| Year ended | 9/30/74 | 9/30/75 | 9/30/76 |
|---|---|---|---|
| Accumulated job costs at yearend | $1,886,131 | $1,888,233 | $1,872,117 |
| Ending inventory at LIFO costs | 1,746,709 | 1,735,867 | 1,590,584 |
| LIFO Reserve | 139,422 | 152,366 | 281,533 |
| Less previous year adjustment | 0 | 139,422 | 152,366 |
| Adjustment | 139,422 | 12,944 | 129,167 |

## OPINION

Petitioner contends that the job cost method of accounting for the cost of the homes which it sold that it used prior to its fiscal year 1974 was a use of inventories. For this reason, petitioner argues that it is entitled to elect the LIFO inventory method under section 472. Respondent disputes that petitioner's accounting method prior to its fiscal year 1974 utilized "inventories." Respondent contends that the method used by petitioner prior to its 1974 fiscal year represented a proper capitalization of petitioner's acquisition, development, construction, and other costs. It is respondent's primary position that under the provisions of section 471, petitioner in its real estate development business is not permitted or required to maintain inventories and, therefore, is not entitled to elect the LIFO method of valuing inventories provided for in section 472. It is respondent's further contention that section 263

mandates that petitioner's home costs, as improvements to real property, be capitalized and not inventoried. Respondent does not challenge any of the specific computations made by petitioner in utilizing the disputed method, but contends that such method may not properly be used by petitioner.

Section 446(a) requires that taxable income be computed by a taxpayer under the method of accounting it regularly uses in keeping its books. Section 446(b), however, provides that where the method of accounting regularly utilized by the taxpayer does not clearly reflect taxable income, the computation of taxable income shall be made under such method, as, in the Commissioner's opinion, does clearly reflect income. Section 446(e) requires, except where otherwise expressly provided, that a taxpayer who desires to change his regular method of accounting first obtain the Commissioner's consent. Section 471 provides that inventories shall be taken whenever, in the opinion of the Commissioner, the use of inventories is necessary in order to clearly determine the income of any taxpayer, and that the taking of such inventories is to be on such basis as the Commissioner may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting income.

It is well recognized that sections 446 and 471 grant respondent broad discretion. These provisions by their express language and by their longstanding existence have been interpreted as imposing a heavy burden of proof on a taxpayer disputing respondent's determination on accounting matters. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532–533 (1979). In *Lucas v. Kansas City Structural Steel Co.*, 281 U.S. 264, 271 (1930), the Supreme Court, in a decision involving respondent's disallowance of an inventory accounting method, went so far as to say that the taxpayer must show such determination to be "plainly arbitrary."

Respondent in his regulations under section 471 has prescribed the situations where a taxpayer is required or permitted to maintain inventories. Section 1.471–1, Income Tax Regs., states generally when inventories will be required.

However, section 472[4] specifically authorizes the use of the LIFO method as a permissible method of inventorying goods. Since this statute expressly grants taxpayers the right to elect the LIFO method for purposes of inventorying their goods, respondent's discretion as to an initial election of LIFO is clearly more circumscribed than would be generally the case as to changes of accounting method. *Peninsula Steel Products & Equip. Co. v. Commissioner*, 78 T.C. 1029, 1055 (1982); *John Wanamaker Philadelphia, Inc. v. United States*, 175 Ct. Cl. 169, 174–177, 359 F.2d 437, 439–441 (1966). Cf. sec. 446(e). A taxpayer's change to the LIFO method of inventorying his goods is governed by respondent's regulations under section 472. *Peninsula Steel Products & Equip. Co. v. Commissioner*, *supra* at 1055.

Section 1.472–1(a), Income Tax Regs., in pertinent part, states that—

(a) Any taxpayer permitted or required to take inventories pursuant to the provisions of section 471, and pursuant to the provisions of secs. 1.471–1 to 1.471–9, inclusive, may elect with respect to those goods specified in his application and properly subject to inventory to compute his opening and closing inventories in accordance with the method provided by section 472, this section, and sec. 1.472–2. * * *

Therefore, unless petitioner was required or permitted to maintain inventories, respondent's determination that petitioner may not properly use a LIFO method to account for the cost of the homes it sold must be sustained. Respondent did not consent to petitioner's change to a LIFO method and it is

---

[4]Sec. 472 provides, in pertinent part, as follows:

SEC. 472. LAST-IN, FIRST-OUT INVENTORIES.

(a) AUTHORIZATION.—A taxpayer may use the method provided in subsection (b) (whether or not such method has been prescribed under section 471) in inventorying goods specified in an application to use such method filed at such time and in such manner as the Secretary or his delegate may prescribe. The change to, and the use of, such method shall be in accordance with such regulations as the Secretary or his delegate may prescribe as necessary in order that the use of such method may clearly reflect income.

(b) METHOD APPLICABLE.—In inventorying goods specified in the application described in subsection (a), the taxpayer shall:

(1) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof; and second, those acquired in the taxable year;

(2) Inventory them at cost; and

(3) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

stipulated that petitioner's prior method clearly reflected income. If petitioner does not have the right under section 472 to elect the LIFO method, respondent has clearly not abused his discretion in refusing to consent to petitioner's change.

Petitioner contends that under respondent's regulations it was required to maintain inventories and that it always has maintained inventories and is, therefore, entitled to elect the LIFO method in inventorying its home costs. Petitioner argues that it is clearly "a manufacturer since it transforms its materials (bricks, lumber, mortar, etc.) into a new and different article (houses)." From this statement, petitioner concludes that "like every other manufacturer" it uses inventories. Petitioner asserts that its purchases of materials to construct its homes is a substantial income-producing factor in its business and, therefore, it is specifically required to maintain inventories by section 1.471-1, Income Tax Regs. Petitioner maintains that its prior job cost method of accounting was the specific identification inventory method described and sanctioned in section 1.471-2(d), Income Tax Regs. Petitioner acknowledges that we held in *Atlantic Coast Realty Co. v. Commissioner*, 11 B.T.A. 416 (1928), that land owned by a real estate dealer engaged in the business of purchasing and selling land could not be inventoried. Petitioner argues that the *Atlantic Coast Realty Co.* case is inapplicable to the issue in this case because here it is not seeking to inventory its land costs but only its home construction costs.

Respondent recognizes that the *Atlantic Coast Realty Co.* case related only to land but contends that the holding in that case supports his position that petitioner may not properly inventory its home costs. Respondent argues that petitioner's construction and development costs, together with the land acquisition and development costs, are incurred to create a single product, a finished home on an individual lot which petitioner sells as real property. Respondent points out that it has long been his stated position,[5] unchallenged and accepted these many years, that real property is not inventoriable.

---

[5]See O.D. 848, 4 C.B. 47, superseded by Rev. Rul. 69-356, 1969-2 C.B. 109, stating that a taxpayer in computing taxable income is not permitted to inventory real estate held for sale. Petitioner argues that the position taken by respondent and approved by this Court in *Shaw Construction Co. v. Commissioner*, 35 T.C. 1102, 1121 (1961), affd. on other grounds 323 F.2d 316 (9th Cir. 1963), is contrary to this ruling. We do not so interpret the *Shaw Construction*

Respondent contends that the fact that the *Atlantic Coast Realty Co.* case involved raw, unimproved parcels of land is a distinction without a difference.

We agree with respondent that petitioner may not under sections 471 and 472 properly inventory its home costs.

In *Atlantic Coast Realty Co. v. Commissioner, supra,* the taxpayer owned various parcels of raw land, some of which it had held for a number of years. The taxpayer argued that it should be allowed to inventory its land and, in arriving at its closing inventory, it should be allowed to value its remaining land at the lower of cost or market. We held that the real estate was not inventoriable for two reasons. First, we concluded that Congress did not intend by the predecessor of section 471 (section 203 of the Revenue Act of 1918, 40 Stat. 1060) to confer the right to use inventories on all businesses. To support this conclusion, we noted that petitioner had not shown the inventorying of real estate to be an established and accepted accounting practice. Secondly, we observed that an individual parcel of real estate is a unique item, making the task of a lower of cost or market valuation by a taxpayer of its unsold parcels highly impractical and imprecise. *Atlantic Coast Realty Co. v. Commissioner, supra* at 419–420. We stated that the very wording of section 471, that inventories be taken when necessary in respondent's opinion to clearly reflect income, supported our conclusion that Congress did not intend that all businesses be required or permitted to take inventories.

Since section 1.472–1(a), Income Tax Regs., states that any taxpayer permitted or required to maintain inventories pursuant to section 471, and pursuant to sections 1.471–1 through 1.471–9 of respondent's regulations, may elect the LIFO method with respect to those goods properly subject to inventory, the determinative regulation in the instant case is section 1.471–1, Income Tax Regs. This regulation states that inventories at the beginning and end of each year are required in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The regulation

---

Co. case. Although inventories were mentioned in that case, it did not hold that inventories of real estate held for sale were permitted, but merely held that the cost of construction of each house was deductible in the year the house was sold.

goes on to elaborate that the inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which physically will become a part of merchandise intended for sale.

Petitioner acquires materials and supplies to be used in constructing the homes which it builds on lots in the subdivisions it develops. It does not acquire the materials and supplies to resell, but to be used in the construction of the finished homes on lots which it owns and which will be sold as an integral part of the sale of the lot, that is, the lot with the improvements thereon. When petitioner's houses are viewed as the improvements on its land, the house and lot constitute a piece of real property which petitioner holds for sale. In our view, real property should not be considered as "merchandise" within the contemplation of the regulation. See also *Francisco Sugar Co. v. Commissioner*, 47 F.2d 555, 557 (2d Cir. 1931), affg. in part 14 B.T.A. 1062 (1929).

In its commonly accepted usage, the term "merchandise" is defined to encompass wares and goods, not realty. See Webster's New Collegiate Dictionary; Black's Law Dictionary (4th ed. 1968). Although certainly not here controlling, it is interesting to note that real property and the labor, materials, and supplies which enter into improving real property, are generally not considered for accounting purposes to be inventoriable. See Statement 1, A.R.B. No. 43, ch. 4, reprinted in 4 A.I.C.P.A. Professional Standards, AC sec. 5121.03 (CCH 1979);[6] W. Meigs, C. Johnson & R. Meigs, Accounting: The Basis for Business Decisions 364–365 (4th ed. 1977). Although petitioner contends to the contrary, it has not shown that it utilized an "inventory" method prior to its 1974 fiscal year, much less that use of inventories represented the best practice in its industry in accordance with generally accepted accounting principles.[7]

---

[6]This bulletin states that the term "inventory" designates the aggregate of those items of tangible personal property which (1) are held for sale in the ordinary course of business, (2) are in process of production for such sale, or (3) are to be currently consumed in the production of goods or services to be available for sale.

[7]At trial, petitioner offered into evidence the annual statements filed by about five large homebuilding companies with the Securities and Exchange Commission. Each of these five

As respondent points out, petitioner's prior method of accounting for its home construction and land costs represented merely the capitalization of such costs. There is, as acknowledged by respondent, a method of inventory accounting known as the specific identity method which is virtually identical in operation to capitalization. See R. Hoffman & H. Gunders, Inventories-Control, Costing and Effect Upon Income and Taxes 119–120 (1970 ed.); W. Meigs, C. Johnson & R. Meigs, Accounting: The Basis for Business Decisions 374–375 (4th ed. 1977). The employment of this inventory method, where a taxpayer is required or permitted to maintain inventories for Federal tax purposes, is acceptable. Sec. 1.471–2(d), Income Tax Regs. However, petitioner's attempt to characterize its prior method as being this specific identification method of inventory, rather than capitalization, is, in our view, disingenuous.

At the trial, petitioner offered the expert testimony of its chief financial officer. This witness was licensed and had practiced for a number of years as a certified public accountant, and had further played a leading role in having petitioner change to a LIFO method of inventorying its home costs. It was this witness' opinion that capitalization was a method of inventory accounting, and it is such opinion which apparently is the underlying premise of petitioner's position that its prior method was an inventory method.

We do not accept petitioner's contention that capitalization is an inventory method. It is apparent that under this view of petitioner's, even its land costs could properly be accounted for under a LIFO method if it had so elected.

---

companies, like petitioner, was engaged in building homes in subdivisions owned and developed by it. The statements contained balance sheets, which listed as assets inventories which generally consisted of finished homes, work under construction, and materials. On some of the balance sheets, land held for development was also listed as inventory. We consider these statements to be only of minimal value in determining whether petitioner used or may use inventories for Federal tax purposes, since, in one sense, the term "inventory" can mean a catalogue or schedule of the property owned by a person or entity. However, in the instant case, we are concerned with whether a homebuilding company such as petitioner maintains inventories within the meaning of the term as used in sec. 471 and in respondent's regulations thereunder. See *Francisco Sugar Co.' v. Commissioner*, 47 F.2d 555, 557 (2d Cir. 1931), affg. in part 14 B.T.A. 1062 (1929). These statements, further, do not indicate whether these other companies used inventories of the homes and materials in calculating their income for tax purposes. However, it clearly appears that none of these companies used a LIFO method of inventory.

For tax purposes, however, as shown by the statutory provisions, case law, and various regulations, the determination of gain on the sale of land at its cost is the proper treatment. It has consistently been held that the costs of improvements to subdivided real estate held for sale are capital expenditures, allocable to the basis of the taxpayer in the various unsold lots. Sec. 263(a); secs. 1.263(a)–1(a)(1), 1.263(a)–2(a), and 1.263(a)–2(d), Income Tax Regs. See *Henry v. Commissioner*, 362 F.2d 640, 643 (5th Cir. 1966), affg. a Memorandum Opinion of this Court; *Commissioner v. Laguna Land & W. Co.*, 118 F.2d 112, 117 (9th Cir. 1941), affg. in part and revg. in part a Memorandum Opinion of this Court. Under section 1001, the gain from the sale of property is defined as "the excess of the amount realized therefrom over adjusted basis." Section 1012 provides that a taxpayer's basis in his property generally is cost. Where sales of parts of a larger property are made, such as lots within a subdivision, section 1.61–6(a), Income Tax Regs., provides that "the cost or other basis of the entire property shall be equitably apportioned among the several parts, and the gain realized or loss sustained on the part of the entire property sold is the difference between the selling price and the cost or other basis allocated to such part." Section 1016 provides for adjustments to basis for expenditures properly chargeable to capital account, which, under section 1.1016–2, Income Tax Regs., includes the cost of improvements or betterments made to real property. See *Commissioner v. Laguna Land & W. Co.*, *supra* at 117; *Haynsworth v. Commissioner*, 68 T.C. 703, 713 (1977). Upon examining petitioner's prior method of accounting for costs of its houses, it is apparent to us that such method was for tax purposes a method of capitalization, not an inventory method.

The specific identity inventory method and capitalization may arrive at the same result. However, there is a fundamental difference between capitalization and an inventory method. Under capitalization, gain will be determined pursuant to section 1001 on each individual home when it is sold, and such gain is to be determined based generally on the taxpayer's actual cost for that particular home. Since the specific identification method of inventory valuation is only one of several permissible inventory methods, there is not necessarily

the requirement under this method that actual cost be used in arriving at cost of goods sold. Under both the LIFO and FIFO methods, cost-flow assumptions are made concerning the order in which goods in inventory are sold. Further, in valuing a closing inventory, a taxpayer not using the LIFO method may value the inventory at the lower of cost or market. It is apparent that under several of the permitted and generally accepted inventory methods, a departure from the actual cost of the particular items sold takes place. Such departure[8] has been allowed under section 471 and by respondent in his regulations, because the use of actual cost in many instances may not be feasible or may be impractical. See H. Rept. 767, 65th Cong., 2d Sess. (1918), 1939–1 C.B. (Part 2) 86, 88,[9] which is the pertinent legislative history to section 203 of the Revenue Act of 1918 (the predecessor to section 471).

In conclusion, petitioner's prior method, although labeled by petitioner as an "inventory" method, was not an inventory method within the meaning of section 471 and respondent's regulations.

Petitioner lastly complains of being discriminated against because it is in the business of developing and selling finished homes on lots. Petitioner argues that there is no logical reason for treating it differently from taxpayers who manufacture goods, who are allowed to inventory and presumably are entitled to elect the LIFO method.

Section 471 authorizes the respondent to prescribe the use of inventories, when, in his opinion, the use of inventories is necessary in order to clearly determine taxable income. Based on the longstanding acceptance of the *Atlantic Coast Realty Co.* decision, *supra*, as well as on the traditional and commonly accepted understanding that a finished home and lot is not merchandise, we conclude that respondent has not abused the

---

[8]The Second Circuit in *American Can Co. v. Bowers*, 35 F.2d 832 (2d Cir. 1929), expressed the matter differently by stating that "The determination of the value to be placed upon an inventory has no relation to the principle or theory affecting the determination of when income is deemed to be received and when expenses are deemed to be incurred."

[9]The legislative history states:

"In many cases the only way that the net income can be determined is through the proper use of inventories. This is largely true in the case of manufacturing and merchandise concerns. The bill authorizes the Commissioner to require inventories whenever in his opinion the same is necessary in order clearly to reflect the income of the taxpayer."

discretion granted him under the statute in rejecting petitioner's use of inventories on the LIFO method. Petitioner has not met the heavy burden necessary to support a decision in its favor. *Thor Power Tool Co. v. Commissioner, supra* at 532–533; *Lucas v. Kansas City Structural Steel Co., supra* at 271. Since petitioner was neither required nor permitted to maintain inventories under section 471 and sections 1.471–1 through 1.471–9 of respondent's regulations, it is not entitled to elect the LIFO method of inventory accounting with respect to its home costs. Sec. 1.472–1(a), Income Tax Regs. Since respondent did not consent to petitioner's changing to such method, petitioner's use of the method was improper. Sec. 446(e).

*Decision will be entered for the respondent.*