HOMES BY AYRES, NIGUEL INTERIORS, TUSTIN VILLAGE, INC., FRANK H. AYRES AND SON CONSTRUCTION CO., NEWPORT SHORES BUILDERS, AYRES REALTY AND CHUCK'S FRAMING, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Homes by Ayres v. Commissioner
Docket Numbers: 1160-81, 1387-81, 1388-81, 1389-81.
United States Tax Court
T.C. Memo 1984-475; 1984 Tax Ct. Memo LEXIS 201; 48 T.C.M. (CCH) 1050; T.C.M. (RIA) 84475; September 5, 1984. Paul Frederic Marx, for the petitioners. James M. Kamman, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies in the petitioners' Federal income taxes: Docket No.
Petitioner
Fiscal Year Ended
Deficiency
1160-81
Homes by
9/30/77
$262,807   Ayres, et al.
10/31/78
627,682   1387-81
Roger DeYoung
9/30/76
5,004   Construction Co.
1388-81
DeYoung
5/31/78
38,846   Construction Co.
1389-81
Classic Development
5/31/77
535,596.48
Corp.
5/31/78
37,293.60
*202 The issue for decision is whether petitioners, as builders and sellers of residential real estate, were entitled to adopt the LIFO (last-in-first-out) method of accounting for the cost of homes sold. This issue turns upon whether petitioners were "permitted or required to take inventories" prior to their election of the LIFO method. Section 1.472-1(a), Income Tax Regs.
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Each of the petitioners is a corporation organized under the laws of California. Petitioners Niguel Interiors, Tustin Village, Inc., Newport Shores Builders, and Ayres Realty were wholly-owned subsidiaries of petitioner Homes by Ayres. Petitioner Frank H. Ayres & Son Construction Co. was an affiliated subsidiary of petitioner Homes by Ayres, and petitioner Chuck's Framing, Inc. was a wholly-owned subsidiary of petitioner Newport Shores Builders. The petitioners above named joined in filing consolidated Federal income tax returns for the periods at issue in this case. The principal office of petitioner Homes by Ayres is in *203 Huntington Beach, California. Petitioner Tustin Village, Inc. was a general partner in partnerships known as Anaheim Housing and La Cuesta Tract 7596, holding a 75 percent partnership interest in each partnership. DeYoung Construction Co. was a general partner holding a 25 percent partnership interest in La Cuesta Tract 7596, and petitioner Roger DeYoung Construction Co. was a general partner holding a 25 percent partnership interest in Anaheim Housing. The principal office of petitioner Classic Development Corp. is in Irvine, California. The petitioners timely filed Federal income tax returns for the years involved in this case. During the years in issue, petitioners Frank H. Ayres & Son Construction Co., Newport Shores Builders, Tustin Village, Inc., and Classic Development Corp., as well as the partnerships known as Anaheim Housing and La Cuesta Tract 7596, (the partnerships) were engaged in the business of constructing and selling tract housing to the general public, and used the accrual method of accounting in computing their gross income from the sale of houses. They have consistently capitalized the cost of their land held for development and sale, the cost of offsite *204 improvements, and the direct and indirect costs of onsite work-in-process and completed houses. Petitioners contend that such asset or cost accounts constituted "inventories" within the meaning of the Internal Revenue Code. The petitioners named in the preceding paragraph and the partnerships accounted for their construction costs by accumulating costs for each phase of a subdivision. A "phase" consisted of several lots on which houses were constructed. The sizes, models, designs, and prices of completed houses would vary within a phase. Before beginning construction of houses in a phase, the petitioners and partnerships would estimate total construction costs on a cost-per-square-foot or other appropriate basis. These estimated costs were updated to conform to subsequent contracts for labor and materials. To determine the cost of sales, the petitioners and partnerships accumulated all costs incurred with respect to a phase, and then allocated those costs pursuant to one of the two allocation methods described below. Petitioners Frank H. Ayres & Son Construction Co., Newport Shores Builders, and Tustin Village, Inc. and the partnerships used the "relative sales value method" *205 to determine their cost of sales. That method consists of multiplying total capitalized costs at completion by a fraction, the numerator of which is the aggregate selling prices of the houses sold, and the denominator of which is the aggregate estimated selling prices of all houses sold and to be sold. This method conformed to generally accepted accounting principles and to accepted accounting practice in the homebuilding industry for financial accounting purposes. Petitioner Classic Development Corp. used the "average cost method" to determine its cost of sales. This method determines cost by multiplying total capitalized costs at completion by a fraction, the numerator of which is the aggregate number of completed houses sold and the denominator of which is the aggregate number of houses sold and to be sold. Classic Development Corp. subsequently filed amended tax returns for the fiscal years ended May 31, 1976, and May 31, 1978, in which it changed its method of determining cost of sales from the average cost method to the "square footage method." The square footage method determines costs of sales by multiplying total capitalized costs at completion by a fraction, the numerator *206 of which is the aggregate square footage of the completed houses sold and the denominator of which is the aggregate square footage of all houses sold and to be sold. Both the average cost method and the square footage method of determining costs conformed to generally accepted accounting principles and to accepted accounting practice in the homebuilding industry for financial accounting purposes. Respondent concedes that regardless of the outcome of this proceeding, Classic Development Corp. properly adopted the square footage method of determining its cost of sales. Petitioners Frank H. Ayres & Son Construction Co., Newport Shores Builders, Tustin Village, Inc. and Classic Development Corp. and the partnerships filed applications to use the LIFO inventory method (forms 970) with respect to their onsite costs as a single natural business unit pool. Onsite costs included work in process and completed houses, but excluded land and offsite costs. The petitioners and partnerships did not apply to adopt the LIFO inventory method with respect to their land held for development and sale and offsite costs, and the proper accounting treatment of such items is not in issue. Generally *207 accepted accounting principles and industry practice do not require that each of the petitioners and partnerships use the LIFO inventory method to recover costs. Respondent determined the deficiencies by returning each of the petitioners to the method of determining cost of sales they had used prior to filing the application to use the LIFO inventory method. OPINION We must decide whether petitioners were entitled to adopt the LIFO method of inventory accounting. A taxpayer must, "except as otherwise expressly provided," obtain the consent of the Secretary in order to change his method of accounting. Section 446(e); [2]section 1.446-1(e)(2)(i), Income Tax Regs.Section 472 provides an express exception to the consent requirement by permitting taxpayers to elect to use the LIFO method of inventory accounting with the following caveat: "The change to, and the use of, such method shall be in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income." Section 472(a); Peninsula Steel Products & Equipment Company, Inc. v. Commissioner,78 T.C. 1029, 1055 (1982). *208 Thus, taxpayers who wish to adopt the LIFO method need to comply with the regulations under section 472 rather than the general principles of section 446(e). Respondent's discretion in this area is far more circumscribed than in the case of changes in accounting method generally. Peninsula Steel Proucts & Equipment Company, Inc. v. Commissioner,supra at 1055. Section 1.472-1(a), Income Tax Regs., provides that: (a) Any taxpayer permitted or required to take inventories pursuant to the provisions of section 471, and pursuant to the provisions of §§ 1.471-1 to 1.471-9, inclusive, may elect with respect to those goods specified in his application and properly subject to inventory to compute his opening and closing inventories in accordance with the method provided by section 472, this section, and § 1.472-2. * * * We therefore must look to section 471, and to sections *209 1.471-1 through 1.471-9, Income Tax Regs., to determine whether petitioners and the partnerships were "permitted or required to take inventories", and thus whether they were entitled without prior consent to elect to use the LIFO method "with respect to those goods * * * properly subject to inventory". Section 471 provides that inventories shall be taken "[w]henever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer." Section 1.471-1, Income Tax Regs., states that inventories are necessary in order to reflect taxable income correctly "in every case in which the production, purchase, or sale of merchandise is an income-producting factor." Nowhere in the provisions of sections 1.471-1 through 1.471-9 is the use of inventories sanctioned for items other than "merchandise," and petitioners apparently concede on brief that their homes must be characterized as "merchandise" in order to be inventoriable. Accordingly, the issue before us is whether the homes petitioners sold are "merchandise."
*210 Petitioners argue that real estate should be regarded as "merchandise" for Federal income tax purposes, and that their prior method of capitalized costs should be regarded as an inventory method of accounting. They state on brief that: Today's homebuilder is a manufacturer who transforms bricks, lumber and mortar into houses. * * * He has created his own factory--the building site; the sky is his roof and the dirt, his floor. His machinery is the hammer, saw and nail. He is essentially a manufacturer whose workers move along a stationary assembly line. For example, workers will install pre-cast fire-places in all units, others will add windows to each unit while others will add the doors, etc. Thus, each unit produced has a similar percentage of costs incurred. The construction process currently applied to today's tract housing is therefore virtually no different from that employed in the aerospace industry, automobile industry, mobile home industry or by manufacturers of prefabricated housing. While petitioner has presented an excellent case, we do not write on a clean slate. This Court has squarely faced the identical issue in W.C. and A.N. Miller Development Co. v. Commissioner,81 T.C. 619 (1983), *211 on facts substantially similar to those now before us. We held in that case that a company engaged in the business of developing real estate was not entitled to elect to use the LIFO method of accounting for its completed homes and homes under construction, because, "[i]n our view, real property should not be considered as 'merchandise' within the contemplation of the regulation." W.C. and A.N. Miller Development Co. v. Commissioner,supra at 630. We further stated that "[w]e do not accept petitioner's contention that capitalization is an inventory method." W.C. and A.N. Miller Development Co. v. Commissioner,supra at 631. Our reasons for reaching those conclusions were set out fully in that opinion and it will serve no useful purpose to repeat them here. It is sufficient to note that that case clearly requires that we hold for respondent in this case. Since each house and lot constitutes a piece of real property, W.C. and A.N. Miller Development Co. v. Commissioner,supra at 630, and since real property does not constitute *212 "merchandise" within the meaning of section 1.471-1, Income Tax Regs., it follows that petitioners and the partnerships were not "permitted or required to maintain inventories", and thus were not permitted to elect to use the LIFO method under section 472 and section 1.472-1, Income Tax Regs. Rather, petitioners and the partnerships were required by section 446(e) to secure the consent of the Secretary before changing their method of accounting. Due to certain concessions, Decisions will be entered under Rule 155.
Footnotes
1. The following cases have been consolidated with docket number 1160-81; Roger DeYoung Construction Co., docket no. 1387-81; DeYoung Construction Co., docket no. 1388-81; Classic Development Corp., docket no. 1389-81.↩
2. All statutory references are to sections of the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩